EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Appellant,

v.

Heather E. CARTER, Appellee.

No. 3:01–CV–99(DF).

United States District Court,
M.D. Georgia,
Athens Division.

May 16, 2002.

Thomas W. Joyce, Macon, GA, for appellant.

Ernest V. Harris, Athens, GA, for appellee.

William M. Flatau, Macon, GA, trustee.

## ORDER

FITZPATRICK, District Judge.

Before the Court is an appeal from the decision of the Bankruptcy Court to discharge approximately $30,000 in student loans pursuant to 11 U.S.C.A. § 523(a)(8). Appellant contends the Bankruptcy Court erred in discharging this debt because the debt did not impose an "undue hardship" on her and her dependents.

## I. FACTUAL BACKGROUND

Appellee is a thirty-nine-year-old female who is currently married and has two children, ages three and six. She and her husband have been married since 1991. Until recently, they resided in one side of a duplex rented from Appellee's mother in law, but they have since begun renting the other half as well. Neither Appellee nor her children have medical or life insurance.

In 1990, Appellee received her undergraduate degree in business administration from the University of Georgia, graduating with a 3.0 grade point average. During the fall of 1991, Appellee began attending law school classes at the University of Georgia. Appellee had to leave during her first year due to the death of her father, and she returned the following year. She then withdrew again during her second year, and she never returned to complete her legal education. In 1994, Appellee decided to seek a second undergraduate degree in accounting, but she ultimately withdrew at the conclusion of her first year after becoming pregnant. At the conclusion of her undergraduate education, Appellee had incurred approximately $27,000 in debt from educational loans, but she repaid those loans in full using money she inherited after the death of her father. Additionally, as a result of her two attempts to obtain additional degrees, Appellee incurred over $60,000 in debt in loans from several lenders—$30,000 of which she owed to Appellant. In contrast to her undergraduate loans, however she has not been able to pay back this money.

Since 1997 Appellee has held several jobs, most of which involved business and accounting work. Her last place of employment was Hogan Lumber Company, where she worked as a record keeper and received approximately $350 per week. Initially, she was allowed to bring her infant son to work; however, her employer ceased allowing her to do so as her child got older. Due to her concerns about cost efficiency, Appellee decided to quit her job and stay home to care for her children herself. Beginning in 2004, Appellee plans to work as a teacher's aid, and she expects to take home approximately $365.00 per month.

Appellant's husband is employed as a sound technician, and his gross income for 2000 was somewhere between $30,000 and $35,000. Several years ago he had an extramarital affair that lasted for over two years and resulted in the birth of a child out of wedlock. Her husband now owes $200 per month in child support, and these payments increase in proportion to his income.

After considering this evidence, the Bankruptcy Court concluded that requiring Appellee to repay her educational loans would impose on her an undue hardship. In reaching this conclusion, the Bankruptcy Court determined that "there simply has been no money available, after basic living expenses, to make these payments" at the current time. It also determined that refusing to discharge this debt would subject Appellee to undue hardship in the future. Specifically, the Bankruptcy

Court noted that her marriage was currently unstable and likely to result in divorce in the near future, and that should that occur, Appellee would likely retain custody of the children and would have difficulty collecting child support. Finally, the Bankruptcy Court determined that Appellee had made a good faith effort to repay these loans. Accordingly, the Bankruptcy Court discharged Appellee's debt. Appellant now appeals from that decision.

## II. DISCUSSION

### A. Standard of Review

A district court reviewing the decision of a bankruptcy court must accept a bankruptcy court's findings of fact unless they are clearly erroneous, and special weight should be given to the bankruptcy court determination as to witness credibility. *See* Fed.Bankr.R. 8013; *Chase & Sanborn Corp. v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990). However, a bankruptcy court's conclusions of law are subject to de novo review. *See In re Chase & Sanborn Corp.*, 904 F.2d at 593. Therefore, the reviewing court " 'freely examines the applicable principles of law to see if they were properly applied and freely examines the evidence in support of any particular finding to see if it meets the test of substantiality.' " *Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.)*, 951 F.2d 1223, 1228–29 (11th Cir.1992) (quoting *Southtrust Bank of Ala., N.A. v. Thomas (In re Thomas)*, 883 F.2d 991, 994 (11th Cir.1989)). At the conclusion of this review, it is within the district court's power to "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.Bankr.R. 8013.

### B. Undue Hardship Analysis

An individual debtor is not discharged from any debt

for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, *unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.*

11 U.S.C.A. § 523(a)(8) (West Supp.2001) (emphasis added). Therefore, unless the debtor demonstrates the imposition of an undue hardship, the debt is not dischargeable. In determining whether a non-discharge would impose an "undue hardship" upon the debtor, the Second Circuit set out a three-part test in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam).[1] Under *Brunner,* a debtor meets the undue hardship exception only if she shows: (1) she cannot maintain a "minimal standard of living for herself and her dependents" if forced to repay the loans; (2) "additional circumstances" indicate that these conditions will persist; and (3) she has made

---

1. The *Brunner* test, has been widely accepted by other circuits that have addressed this issue. *See Ill. Student Assistance Comm'n v. Cox,* 273 B.R. 719, 722–23 (N.D.Ga.2002) (listing the circuits applying *Brunner*). While the Eleventh Circuit has not yet adopted the *Brunner* test, many courts within this circuit rely on the three-prong test set out therein. *See id.; In re Mallinckrodt,* 274 B.R. 560, 564 (S.D.Fla.2002); *In re Ivory,* 269 B.R. 890, 898 (Bankr.N.D.Ala.2001); *Rivers v. United Student Aid Funds, Inc. (In re Rivers),* 213 B.R. 616, 619 (Bankr.S.D.Ga.1997). The Court agrees that the *Brunner* test is applicable here.

"good faith efforts to repay the loans." *Brunner*, 831 F.2d at 396.

### 1. Whether § 523(a)(8) Allows the Court to Partially Discharge Debt

While *Brunner* provides clear standards for determining whether a debtor falls under the undue hardship exception, there remains some disagreement as to whether a debtor can receive a partial discharge if she meets at least some of the prongs or whether failure to meet even one prong bars discharge completely. Currently there is a circuit split as to whether § 523(a)(8) permits a bankruptcy court to grant a partial discharge of debt from educational loans. *See Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1124–25 (9th Cir.2000) (granting a partial discharge); *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438–39 (6th Cir.1998) (granting a partial discharge); *In re Roberson*, 999 F.2d 1132, 1137–38 (7th Cir.1993) (finding no authority to grant a partial discharge). Furthermore, this split remains unresolved in the Eleventh Circuit. *See Cox*, 273 B.R. at 722–23; *In re Rivers*, 213 B.R. at 618. For the following reasons, however, the Court finds that § 523(a)(8) does not allow the bankruptcy court to grant a partial discharge for debts incurred from these types of loans.

As a preliminary matter, the language of § 523(a)(B) does not indicate that Congress intended to allow bankruptcy courts to discharge debt incurred through educational loans. In fact, the language of the statute provides only two courses of action: either (1) the debtor can afford to repay the loans so that the loan is non-dischargeable, or (2) requiring repayment would create an undue hardship so that the loan should be discharged. Accordingly, § 523(a)(8) provides no express allow-

ance for partial discharges. Furthermore in considering the language of § 523 as a whole, it does not appear that Congress intended for bankruptcy courts to fashion partial discharges for student loans. In contrast to other provisions in the statute which provide explicit directions as to how bankruptcy courts should fashion remedies, § 523(a)(8) does not permit the Court to restructure debt or limit repayment amounts; it is simply silent as to bankruptcy courts' powers to create such ad hoc remedies under the circumstances. *See, e.g.*, 11 U.S.C.A. § 523(a)(5) (West Supp.2001) (limiting the circumstances and extent to which support and maintenance payments are dischargeable). "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (internal quotation marks omitted). Without the inclusion of such guidance and limitations, therefore, the Court is unable to conclude that Congress intended § 523(a)(8) to allow for the partial discharge of debt incurred through educational loans.

Despite the absence of any language expressly allowing for partial discharges, several courts have avoided the all-or-nothing dichotomy through the exercise of their equitable powers, finding "authority in 11 U.S.C. § 105(a) (West 1993), which permits the bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,' so long as such action is consistent with the Bankruptcy Act." *In re Hornsby*, 144 F.3d at 439. Granting partial discharges for student loan debt, however, would not be "consistent with the Bankruptcy Act." As previously noted, § 523(a)(8) (in contrast to other portions of the statute) does not authorize bankruptcy

courts to engage in restructuring debt or limiting the amount of indebtedness. Therefore, to assume such a role by picking and choosing which debts are and are not dischargeable would amount to using " § 150(a) to infuse general equitable powers into the mix, which would permit student loan dischargeability upon a lesser showing, [and] would thus conflict with the specific mandate in § 523(a)(8)." *Cox*, 273 B.R. at 723. As the Eleventh Circuit has noted, "[t]he statutory language of the Bankruptcy Code should not be trumped by generalized equitable pronouncements, especially when Congress has been explicit when it intends for courts to exercise equitable discretion in the bankruptcy arena." *Welzel v. Advocate Realty Invs., LLC* (*In re Welzel*), 275 F.3d 1308, 1318 (11th Cir. 2001); *see also Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 24–25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (noting that "[b]ankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides"); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (noting that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). Accordingly, because Congress has left no room for the Court to exercise its equitable powers under this portion of the Bankruptcy Code, the Court will not consider partially discharging Appellee's student loan debt.

### 2. Application of the *Brunner* Test

The first prong, which "should serve as the starting point for the ... inquiry," sets out the "bare minimum" showing necessary to establish undue hardship. *In re Roberson*, 999 F.2d at 1135. After reviewing the facts, the Bankruptcy Court concluded that "there simply has been no money available, after living expenses, to make [her loan] payments." Additionally, it does not appear that Appellee or her dependents have been living lavishly or beyond their means. In fact, they lack many basic needs such as coverage under a dental or health insurance plan. Accordingly, the Court finds no error in the Bankruptcy Court's determination that Appellee has satisfied the first prong of the *Brunner* test and that requiring Appellee to repay her loans under the current circumstances would appear to force her and her dependents to live below a minimal standard. *See In re Mallinckrodt*, 274 B.R. at 566.

■ Having determined that repayment of these loans would impose current hardships on Appellee, it is necessary to determine the long-term effects of non-dischargeability. Driving this analysis is the rationale that "it is not enough for the debtor to demonstrate that he is in current financial straits. Rather, he must prove 'a total incapacity ... in the future to pay his debts for reasons not with her [sic] control.'" *In re Mallinckrodt*, 274 B.R. at 566–67 (quoting *Brightful v. Pennsylvania Higher Educ. Assistance Agency* (*In re Brightful*), 267 F.3d 324, 328 (3d Cir. 2001)) (citation omitted). Additionally, the Seventh Circuit has recognized that " 'the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment.'" *In re Roberson*, 999 F.2d at 1136 (quoting *Briscoe v. Bank of N.Y.* (*In re Briscoe*), 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)). In looking to other courts' application of the second prong, it becomes clear that satisfying this standard "is not easy." *In re Mallinckrodt*, 274 B.R. at 567.

In *In re Brightful*, the Third Circuit applied the *Brunner* test to a debtor who

had no college degree and suffered from some relatively severe psychological problems. *See In re Brightful*, 267 F.3d at 328–29. Despite the fact that she could not "anticipate . significantly increased earnings in the future that would flow from her educational investment," the Third Circuit found that she had nevertheless failed to satisfy the "additional circumstances" analysis. *See id.* at 331. In *In re Webb*, 132 B.R. 199, 203 (Bankr.M.D.Fla. 1991), the bankruptcy court examined a request by a debtor who was divorced with three children (one of whom was hearing disabled), who had not received child support payments, and who had recently lost her job to have her educational loans discharged. In applying the *Brunner* analysis, the court recognized that while the debtor was unable to make payments at the time, "there is no evidence that her inability to make payments is permanent. The record demonstrates no additional circumstances indicating a likelihood that her current inability to find any work will extend for any significant period of time." *Id.* at 202. Additionally, the court noted that she was not disabled or facing a "total foreclosure of job prospects in her area of training." *Id.* Therefore, in each of these cases, the debtor's immediate hardships had only a minimal effect on the court's determination of future ability to pay.

Like the debtors in those cases, Appellee does face certain circumstances that will make her short-term duty to repay her loans extremely difficult. However, a "bleak forecast of the near future . . . [where] the debtor's straits are only temporary" is insufficient to demonstrate undue hardship under the second prong of *Brunner.* *In re Roberson*, 999 F.2d at 1137. Here, several factors indicate that Appellee's situation is likely to improve over time. While Appellee is currently unemployed, the Court finds no impediments to her obtaining gainful employment in the future. She suffers from no major disabilities that would prohibit her from working. She graduated with a degree in business management with a 3.0 grade point average, and she has had prior experience managing business records and accounts. Furthermore, she has one year of education in accounting, which can only contribute to her business management skills. Finally, as Appellee's children grow old enough to attend school, they will pose less of an economic burden on her ability to gain new employment, thus mitigating her past concerns about paid child care. In fact, the only potential "additional circumstance" that could impose long-term limits on Appellee's ability to repay her loans involves the possibility and effects of a future divorce.[2] However, even assuming that a divorce will occur, Appellee has not met her burden of demonstrating how such a future event would prevent her from making her loan payments without

---

**2.** Appellant contends that the Bankruptcy Court erred in considering the possibility and effects of a future divorce on Appellee's ability to make loan repayments. The Court disagrees. Certainly, concerns about future divorce fall under the category of "additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." *Brunner*, 831 F.2d at 397. Furthermore, the Bankruptcy Court made this determination based on testimony presented by Appellee. *See In re Brightful*, 267 F.3d at 330 (noting that the bankruptcy court is to "draw reasonable conclusions" from testimony). *In re Basic G. Indus.*, 173 F.Supp. 903, 904 (S.D.Tex.1959) (noting that "when the orders turn in part upon oral testimony, some deference is due to judgment of the only branch of the court confronted with the witnesses"). Nevertheless, while the Bankruptcy Court did not err in considering the likelihood of divorce in the future, the Court does not find that such an event would satisfy the additional circumstances requirement.

failing below the minimal standard of living. As already noted, Appellee has a solid educational background that gives her strong future earning potential, and her concerns about child care will be diminished once both children are attending school.

In reviewing the Bankruptcy Court's findings, the Court finds that Appellee has not satisfied her burden of showing her future inability to repay her educational loans. Having found that Appellee has not sufficiently demonstrated "additional circumstances" that would lead to undue hardship if her loans were not discharged, the Court need not engage in a review of the third prong of *Brunner. See Cox*, 273 B.R. at 723 (noting that numerous "federal courts that have addressed § 523(a)(8) have opined that a debtor's failure to satisfy each prong of the *Brunner* test is fatal to his claim").

## III. CONCLUSION

The Court finds that the Bankruptcy Court erred in its determination that refusing to discharge Appellee's debt from educational loans would subject her to undue hardship. Here, it is clear that Appellee's "hardship is real, but ... it is not 'undue,' and therefore [the Court] cannot discharge her obligation to repay her student loans." *In re Brightful*, 267 F.3d at 331. Accordingly, the decision is hereby **REVERSED.**

## *JUDGMENT*

Pursuant to the Order of this Court filed May 16, 2002, and for the reasons stated therein, the decision of the Bankruptcy Court is REVERSED.

Judgment is hereby entered in favor of the Appellant finding that the debtor's student loan obligations cannot be discharged in bankruptcy.