**In re Jennifer Griffith ROACH, Debtor.**

**Jennifer Griffith Roach, Plaintiff,**

**v.**

**United Student Aid Fund, Inc., Defendant.**

**Bankruptcy No. 00–13209. Adversary No. 01–1263.**

United States Bankruptcy Court, E.D. Louisiana.

Jan. 13, 2003.

Michael Gaffney, New Orleans, LA, for plaintiff.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter came on for trial on July 15, 2002 on the complaint of Jennifer Griffith Roach ("Ms. Roach"), the debtor, to have student loans discharged under 11 U.S.C. § 523(a)(8). Ms. Roach had made these loans with the Educational Credit Management Corporation ("Educational Credit"). The court finds that Ms. Roach has not met her burden of proving undue hardship under Section 523(a)(8). Therefore, her student loans are not discharged.

### I. *Findings of Facts*

#### A. *Ms. Roach's student loans*

1. Educational Credit holds one promissory note executed by Ms. Roach. As of August 22, 2001, the promissory note had an outstanding balance of $49,475.66 plus interest at a rate of 9.00%.[1]

2. The note is a consolidation loan of prior student loans to Ms. Roach disbursed

---

1. D. Ex. 4.

on April 24, 1997, following her graduation. It was originally held by Sallie Mae and guaranteed by United Student Aid Funds, Inc., and then assigned to Educational Credit.[2]

3. This loan is an educational loan made, insured, or guaranteed by a governmental unit, as defined by 11 U.S.C. § 523(a)(8).

4. The debtor is in default on the promissory note held by Educational Credit.

### B. *Ms. Roach's testimony*

5. Ms. Roach testified that she is 42 years old and married, with three dependent children, ages 13, 14, and 19.

6. Ms. Roach also has one dependent grandchild for whom she provides financial support, even though she has no legal obligation to do so.

7. Ms. Roach was divorced in 1997. She remarried on May 28, 2000 to Mark Haston ("Mr. Haston").

8. Ms. Roach attended Southern University of New Orleans from 1991 to 1992, with a concentration in substance abuse counseling.[3]

9. Ms. Roach attended Delgado University of New Orleans from 1992 to 1994, with a course concentration in pre-nursing. She attended Charity/Delgado School of Nursing from 1994 to 1996, where she earned an associates' degree in nursing.

10. Ms. Roach worked as a registered nurse at University Hospital from June 1996 through November 1996. She worked as a registered nurse at Memorial Medical Center from October 1996 through November 1997.[4]

11. Ms. Roach worked as a waitress at Café Rani from March 1999 through June 1999, as a typist at Neelis Typing from June 1999 to February 2000, and as a receptionist at Evans–Graves Engineers from April 2000 to August 2000.[5]

12. Ms. Roach has worked as a registered nurse, with restrictions, at River Oaks Psychiatric Hospital ("River Oaks") from September 2000 to the present, in the dual diagnosis unit.[6]

### C. *Ms. Roach's History of Alcoholism*

13. Ms. Roach first sought help for alcoholism at age 23. Her treatment from age 23 to 25 included several inpatient stays at hospitals in southeastern Louisiana. She received transitional living and counseling with Brownie's Place in Ponchatoula, Gatehouse Halfway house, and a four-month stay in an all-women's halfway house in Omaha, Nebraska.[7]

14. Following treatment, Ms. Roach remained sober for over 12 years. During this time, she pursued her nursing education and career.

15. Ms. Roach suffered a relapse in 1997, following her divorce. She reported herself as an alcoholic to the Louisiana State Board of Nursing in November 1997, and entered the Recovering Nurses Program. As a result, her nursing license was suspended.[8]

---

**2.** P.Ex. 4; D. Ex. 4, 7, 9.

**3.** P.Ex. 1 at Answer to Interrogatory No. 14.

**4.** *Id.* at Answer to Interrogatory No. 4. The almost three-year gap in Ms. Roach's employment as a nurse is explained in the next section, paragraphs 15–18, *infra.*

**5.** *Id.*

**6.** *Id.*

**7.** *Id.* at Answer to Interrogatory No. 8.

**8.** *Id.*

16. As a member of the Recovering Nurses Program, Ms. Roach is required to participate in three twelve-step meetings weekly, as well as a Recovering Nurses meeting each week, for a minimum of six hours per week spent in meetings and support groups. Ms. Roach is also required to attend four Alcoholics Anonymous meetings per month.[9]

17. Ms. Roach sought both inpatient and outpatient treatment at the following facilities for her alcoholism from 1997 to 1999:

Kenner Regional Medical Center outpatient treatment (2.5 months); Palmetto Addiction Recovery Residential Facility (4.5 month stay); LSBN-recommended facility located in Rayville, Louisiana; and Addiction Recovery Resources of New Orleans (six months).[10]

18. Ms. Roach applied for reinstatement of her nursing license in April 2000 after she had remained sober for ten months.[11] Her license was reinstated on May 20, 2000, subject to probationary restrictions for five years from the date of reinstatement.[12]

19. Under the restrictions, Ms. Roach is not permitted to accept a supervisory nursing position and must work under constant R.N. supervision. Also, Ms. Roach is prohibited from working overtime, nights, or in what the board defines as "high-stress areas" (e.g. ER, critical care).[13]

20. Ms. Roach's present job in working to help others overcome their substance abuse addictions, assists in her own recovery.

### D. *Mr. Haston's Testimony*

21. Ms. Roach's husband, Mr. Haston, has an air conditioning installation business. After he developed a serious heart condition and underwent bypass surgery, he became subject to severe physical limitations. Since then, his business has failed to be profitable. He has no regular employees, and due to his condition, he must contract out most of his labor and must regularly turn down work.

22. Mr. Haston's medical bills related to his heart surgery total $8,522.49. His regular monthly insurance premium costs $208.83.[14]

23. Mr. Haston testified that he has not yet filled out his income tax returns for the years of 1997, 1998, 1999, or 2000.

### E. *Ms. Roach's income and expenses*

24. Ms. Roach's income for the past few year is as follows:

| Date | Gross Income | Adjusted Gross | Taxable Income |
|---|---|---|---|
| 1998 | 0 | 0 | 0 |
| 1999 | 6,126 | 6,126 | 0 |
| 2000 | 14,296 | 14,296 | 2,221 |
| 2001 | 37,679 | 37,679 | 25,179 [15] |

25. Ms. Roach's estimated monthly living expenses for herself, her spouse, and her dependents total $2,830.83. Her estimated net monthly income totals $2,749.88.[16]

26. Ms. Roach's and her dependents' expenses include two health insurance policy premiums, doctor visits and medical expenses for both her and her husband,

---

**9.** P.Ex. 21, 22, 25.

**10.** P.Ex. 1 at Answer to Interrogatory No. 8; P.Ex. 20, 24.

**11.** P.Ex. 20.

**12.** P.Ex. 22.

**13.** *Id.*

**14.** *See, e.g.,* P.Ex. 6, 23.

**15.** P.Ex. 2.

**16.** *See, e.g.,* Pl.Ex. 27.

Mr. Haston, in addition to fees for monthly counseling, for urine screens, and payments to the Louisiana State Board of Nursing as required by her participation in the Recovering Nurses Program.[17]

27. Ms. Roach received a 75–cent per hour raise about a year after commencing work at River Oaks.

28. Ms. Roach lives in a small apartment that she rents from her father. The rent includes all utilities. She drives a 1993 Buick LeSabre.

29. Ms. Roach testified that she has no retirement plan, no savings, no certificates of deposit, no stocks, no bonds, etc. She owns no real estate. She owned a house several years ago which was sold during her divorce, from which she realized a small sum of money which was spent.

30. Ms. Roach's children attend public school, and she purchases many of their clothes from the thrift store.

31. Ms. Roach testified that she does not take vacations. The only trips she has taken have been to Mississippi, and one trip to visit sick family members.

32. Ms. Roach has no expenses that she can eliminate or cut back on, and still maintain a minimal standard of living for her and her dependents.

### F. Testimony of Dr. Larry S. Stokes, Ph.D.

33. Dr. Larry S. Stokes, Ph.D. ("Dr. Stokes"), a licensed rehabilitation and professional counselor who is an expert in vocational rehabilitation, testified on behalf of Educational Credit as to his opinion regarding Ms. Roach's rehabilitation potential, employability, and wage-earning capacity.

34. Dr. Stokes testified that Ms. Roach's outlook for continued employment and increased wages is excellent. He testified that there is a large demand in the job market for registered nurses, and that some hospitals are offering significant bonuses to registered nurses.

35. Dr. Stokes' report shows that Ms. Roach should be making $45,427 per year, the average in the New Orleans market. He testified that this figure considered Ms. Roach's contractual limitations with the Nurses Recovery Program. Dr. Stokes testified that without the probationary limitations, Ms. Roach could earn $70,000—$75,000 a year.

36. Dr. Stokes testified that Ms. Roach does not have a loss of earning capacity, but that the probationary restrictions placed on Ms. Roach do presently cause her to earn less.

37. Dr. Stokes testified that he did not have any statistics as to the earning potential of nurses in the Recovering Nurses Program. His estimates were based on analysis of nurses' earning potential in general.

### G. Summary

38. The court finds Ms. Roach to be a highly credible witness as to her testimony as well as her accounting records.

39. The court finds that Mr. Haston's potential income can be ignored as to the debtor. It is clear that his income is not expected to increase and that he does not make enough to contribute to the expenses of the household.

40. The court finds that Ms. Roach's career future is largely dependent on her ability to remain healthy and sober. Unless she suffers a relapse, Ms. Roach's earning potential as a nurse will increase. Her opportunities to advance at River Oaks will return at the end of the five year

---

17. See, e.g., P.Ex. 6, 7, 11, 12, 13, 19, 23.

probationary period, two of which have already passed.

41. The court further finds that if Ms. Roach does suffer a relapse, she will lose her license and her earning potential as a nurse would be seriously impaired.

## H. *Procedural Background*

42. Ms. Roach filed her bankruptcy petition under Chapter 7 on May 26, 2000.[18]

43. Ms. Roach filed the pending complaint to determine dischargeability of student loans on July 11, 2001.[19]

## II. *Conclusions of Law*

## A. *Burden of proof under Section 523(a)(8)*

Section 523(a)(8) of the Bankruptcy Code exempts from discharge a debt:

for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[20]

The general rule under Section 523(a)(8) is that educational loans are not dischargeable in bankruptcy. An exception to the non-dischargeability rule exists, however, if the debtor shows that excepting educational loans from discharge "will impose an undue hardship on the debtor and the debtor's dependents."

■■■ "Undue hardship" is not defined in the Code, but is a term of art that the court interprets in its discretion.[21] Although the Fifth Circuit has not yet delineated the test to be applied in determining undue hardship, most appellate circuit courts and lower courts within the Fifth Circuit have adopted the three part test set forth by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*[22] Accordingly, the court will apply the *Brunner* analysis to the pending case.

The *Brunner* test requires a showing:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.[23]

## B. *Minimal standard of living*

■■■ Under the first prong of *Brunner*, the debtor must prove that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans. To meet

---

18. D. Ex. 2.

19. Pl. # 1.

20. 11 U.S.C. § 523(a)(8).

21. *In re Koch*, 144 B.R. 959, 963 (Bankr. W.D.Pa.1992).

22. 831 F.2d 395, 396 (2nd Cir.1987). *See, e.g., In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993); *In re Cheesman*, 25 F.3d 356, 359–

60 (6th Cir.1994), *cert denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *In re Nary*, 253 B.R. 752, 761 (N.D.Tex.2000); *In re McLeroy*, 250 B.R. 872, 878 (N.D.Tex.2000); *In re Kettler*, 256 B.R. 719, 722 (Bankr. S.D.Tex.2000).

23. *Brunner*, 831 F.2d at 396.

this requirement, the debtor must demonstrate more than simply tight finances.[24] On the other hand, "[u]ndue hardship" does not require poverty or hopelessness.[25] When a family earns a modest income and the family budget, which shows no unnecessary or frivolous expenditures, is still unbalanced, a hardship exists that permits discharge of the debtor's student loan obligations.[26]

Ms. Roach's expenses, reduced to the lowest amount possible, exceed her income. The evidence shows that Ms. Roach's present monthly expenses are $2,830.83, while her monthly income as of the date of trial was $2,749.88. Ms. Roach cannot maintain a minimal standard of living if she is ordered to repay the full amount of her student loans.

The defendant argues that the testimony and financial history of Mr. Haston, Ms. Roach's husband, leaves the question open as to his ability to contribute income to the household.

The court disagrees with this argument. Mr. Haston testified that his business has failed to be profitable due to a heart condition that places severe physical limitations on him. The court is convinced that the state of his business together with the medical expenses related to the recent heart surgery make Mr. Haston's ability to contribute any income to the community negligible.[27]

The defendant also argues that Ms. Roach has failed to meet the first prong of the *Brunner* test because some of her expenses, such as fees for drug testing and counseling, will end upon her completion of the Recovering Nurses Program. The court finds that the temporal nature—if another three years can be classified as temporal—of these expenses is not decisive in determining the present standards of living for Ms. Roach and her dependents.

The first prong of the *Brunner* test is based upon Ms. Roach's "current income and expenses," not upon her future financial status. Even if the defendants are correct as to some of the current expenses ceasing, Ms. Roach's current monthly expenses still exceed her monthly income by some $81.[28] Ms. Roach has reduced her expenses to a bare minimum. She lives in an apartment she rents from her father. She has no assets other than her personal effects and no credit card debt. The court concludes that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself if she is forced to repay her student loans, which presently total $49,475.66.[29]

Ms. Roach has proved the first prong of the *Brunner* test.

### C. *Additional circumstances*

 The second prong of the *Brunner* test requires a showing that additional circumstances exist indicating that the current state of affairs is likely to persist for a significant portion of the repayment

24. *In re Faish*, 72 F.3d 298, 306 (3rd Cir. 1995), *cert. denied, Faish v. Pennsylvania Higher Educ. Assistance Agency*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996).

25. *In re Gotay*, 258 B.R. 531, 533 (Bankr. D.Mass.2001), *citing, In re Kopf*, 245 B.R. 731, 744–45 (Bankr.D.Me.2000); *Hoyle v. Pennsylvania Higher Education Assistance Agency*, 199 B.R. 518, 523 (Bankr.E.D.Pa. 1996).

26. *In re Hoyle*, 199 B.R. at 523.

27. Finding of Fact ## 21–23, 39.

28. Finding of Fact # 25.

29. Finding of Fact # 1.

period of the student loans.[30] This prong properly recognizes the potential continuing benefit of an education, and imputes to the meaning of "undue hardship," a requirement that the debtor show the dire financial condition is likely to exist for a significant portion of the repayment period.[31] Accordingly, "the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment."[32]

■ "Additional circumstances" have been described as circumstances that

> impacted on the debtor's future earning potential but which was either not present when the debtors applied for the loans or has since been exacerbated. Otherwise, the debtor could have calculated that factor into its cost-benefit analysis at the time the debtor obtained the loan.[33]

Such circumstances may also include psychiatric problems, lack of usable job skills, and severely limited education.[34]

■ Ms. Roach has failed to show that her temporary professional limitations are likely to persist for a significant portion of the repayment period of her loans, as required by *Brunner*.[35] Although Ms. Roach is currently unable to pay back her loans, her earning potential is only limited temporarily by her employment contract (for five years, two of which have already passed).[36] Ms. Roach did not present evidence of any impediments on her future career advancement beyond the scope of these contractual restrictions.

■ Discharge of student loans is inappropriate "where a debtor is apparently healthy, presumably intelligent and well-educated, and shows no evidence of extraordinary burdens which would impair further employment prospects," even if a debtor can show a current inability to meet minimum expenses or find gainful employment.[37] After undergoing extensive medical treatment, Ms. Roach is apparently fully-recovered and healthy. Ms. Roach is an intelligent and well-educated woman. She has not offered the court any reason to believe she will face any future encumbrances or limitations on her nursing career following her probationary period.

The testimony of vocational rehabilitation expert Dr. Stokes indicates the scope of Ms. Roach's future employability in her field when the restrictions are lifted. He projected that Ms. Roach could make $70,000 to $75,000 per year.[38] In fact, Dr. Stokes testified that Ms. Roach, even under these restrictions, should be making $45,427 per year, although he admitted that he did not have statistics as to the earning potential of nurses in the Recovering Nurses Program.[39]

The court is not convinced that Ms. Roach's past illness and the temporary ramifications thereafter equate to extraordinary adversity under *Brunner*. Similar to Ms. Roach's case, in *Roberson*, the court

---

30. *Brunner,* 831 F.2d at 396.

31. *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993).

32. *Id.* at 1136, *citing, In re Briscoe,* 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981).

33. *In re Thoms,* 257 B.R. 144, 149 (Bankr. S.D.N.Y.2001).

34. *In re Roberson,* 999 F.2d. at 1137.

35. *See Brunner,* 831 F.2d at 396.

36. Finding of Fact ## 18, 19.

37. *In re Shankwiler,* 208 B.R. 701, 706 (Bankr.C.D.Cal.1997).

38. Finding of Fact # 35.

39. *Id.*

held that the debtor's lack of transportation, caused by his two drunk driving convictions and wrist and back injuries, was not an insurmountable impediment, but only a temporary one. "The debtor in *Roberson* had not shown that his road to recovery was obstructed by the type of barriers which would prevent or delay loan repayment."[40] Here too, the debtor's temporary professional challenges fail to reach the standard of "insurmountable."

Finally, the court is further persuaded by the reasoning of *In re Albert*,[41] which held that the chance of the debtor's relapse into drug addiction was not enough to warrant the discharge of student loans once the debtor was able to work and successfully attempt to improve his status. *Albert* found that drug addiction was not a circumstance contemplated by Congress when the Code was written.[42]

The court finds that Ms. Roach's history of alcoholism and the temporal restrictions on her career do not constitute circumstances that satisfy the second prong of the *Brunner* test. The court is persuaded that Ms. Roach's participation in the Recovering Nurses Program has been successful, and that she will remain healthy and be able to improve her status at the end of her probationary restrictions.

Ms. Roach has failed to prove the second prong of the *Brunner* test.[43]

## D. *Good faith effort to repay the loans*

■ Because the debtor has not proved the second element of *Brunner*, the student loan may not be discharged. In order to complete the analysis, however, the court will examine the third prong of *Brunner*.

■ Ms. Roach did not introduce evidence of any payments on the student loans. Instead, she relies upon the case law that a good faith effort to repay the loans is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses.[44] Furthermore, undue hardship encompasses a notion that debtors may not willfully or negligently cause their own default, but rather their condition must result from "factors beyond [their] reasonable control."[45]

Ms. Roach has worked consistently since she graduated from college, except for short periods of in-patient treatment for alcoholism. She is presently working and her expenses are not unreasonable.

Another factor of good faith under *Brunner* and other courts is whether the debtor attempted other remedies available, such as requesting deferment of the payment.[46] Ms. Roach testified that she consolidated the loans in 1997 and that the stipulated consolidated amount is

---

40. *In re Shankwiler*, 208 B.R. at 706, *citing Roberson*, 999 F.2d. at 1137.

41. *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982).

42. *Id.* at 102.

43. Ms. Roach's potential future income is in contrast to the potential future income of the 43 year-old cellist whose student debts were discharged in an opinion rendered last year by this court in the case of *In re Gerhardt*, 276 B.R. 424 (Bankr.E.D.La.2002), *reversed*, Civil Action No. 02–1770("B")(E.D.La. Nov. 18,

2002), *appeal pending*. All of the evidence there showed that Gerhardt's income would likely stay the same or decrease. 276 B.R. at 432. Nevertheless the district court held that Gerhardt's debts were not dischargeable.

44. *Roberson*, 999 F.2d at 1136.

45. *Id.*

46. *See Brunner* at 397 (". . . Brunner filed for the discharge within a month of the date the first payment of her loans came due"); *Shankwiler*, 208 B.R. at 708; *Thoms*, 257 B.R. at 149.

$49,475.66 owed as of through August 22, 2001. She testified that she attempted to make one payment on the loan. Ms. Roach has consistently made a good faith effort to obtain employment, to maximize her income, and to minimize her expenses. Under the more liberal interpretation of *Brunner*, Ms. Roach has proved the third prong of the *Brunner* test.

### E. Conclusion

It is indeed a shame that this debtor has to be denied a discharge under the current state of the law when she has demonstrated her best effort to rehabilitate her life, is working at the best job now available to her, and is supporting several dependents from her own earnings under circumstances that clearly show she cannot maintain a minimal standard of living for herself and her dependents, if forced to repay the loans. The second prong of the *Brun-*

*ner* test appropriately discharges the student loan debts of debtors whose dire financial condition is likely to continue to exist in the future.[47] But it also penalizes those debtors, such as Ms. Roach, who strive to improve their condition and who may be able to improve their current state of affairs.

However, so long as Congress continues to express in bankruptcy legislation its antipathy to the discharge of student loans,[48] and until the Fifth Circuit adopts a test other than *Brunner*,[49] this court has no other course to follow.

■■■ The court is aware that some courts have allowed a partial discharge of student loans when full payment would perpetuate hardship.[50] This court disagrees with those cases, and cannot find any basis either in the language of the Bankruptcy Code,[51] or in the reasoning of

---

47. *See, e.g., In re Speer*, 272 B.R. 186, 196 (Bankr.W.D.Tex.2001); *In re Siebert*, 10 B.R. 704, 705 (Bankr.S.D.Ohio 1981); *In re Lebovits*, 223 B.R. 265 (Bankr.E.D.N.Y.1998).

48. *See, e.g.,* 11 U.S.C. § 1328(a)(2)(Excepting from Chapter 13 discharge only certain debts under Section 523—(a)(5)(alimony and child support), (a)(8)(student loan), and (a)(9)(personal injury caused by operating a motor vehicle while intoxicated; and thus permitting debts under the remaining subsections of Section 523 to be discharged.)); *In re Kopf*, 245 B.R. 731, 734 (Bankr.D.Me.2000)(Discussing how Congress is taking a progressively restrictive approach to student loan discharge in bankruptcy); *In re Green*, 238 B.R. 727, 733 n. 3 (Bankr.N.D.Ohio 1999)(Discussing the successive amendments to Section 523(a)(8) that make it more difficult to discharge student loans).

49. As pointed out in footnote 22, many of the bankruptcy courts in the Fifth Circuit, including this one, have applied the *Brunner* test even though (1) it has never been blessed by the Fifth Circuit; (2) it is an old (1987), Second Circuit case that is, in the opinion of this court, not particularly well-reasoned;

and (3) it preceded the revocation by Congress in 1998 of the rule allowing discharge of student loans after 7 years. *See In re Green*, 238 B.R. at 733 n. 3.

50. *See, e.g., In re Hornsby*, 144 F.3d 433 (6th Cir.1998)("[P]ursuant to its powers codified in § 105(a), the bankruptcy court here may fashion a remedy allowing the Hornsbys ultimately to satisfy their obligations to TSAC while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances."); *In re Ammirati*, 187 B.R. 902 (D.S.C.1995); *In re Barron*, 264 B.R. 833 (Bankr.E.D.Tex.2001). *See also In re Cheesman*, 25 F.3d 356, 359 (6th Cir.1994)(Bankruptcy court had equitable power to implement 18–month stay to see if debtors' financial condition improved.)

51. It would have been easy for Congress to have used the "to the extent" language in § 523(a)(8) if it wished to provide for partial discharges. *Compare* the language in § 523(a)(8) with that of § 523(a)(2) ("to the extent obtained by… "), § 523(a)(5)("but not to the extent… "), and § 523(a)(7) ("to the extent such debt… ").

these decisions that would allow a partial discharge of a student loan. Instead, this court agrees with the decisions that hold that Section 523(a)(8) means what it says—a discharge of student loans is allowed only upon a showing of hardship that is "undue"—partial discharges are not permitted.[52] Thus, the court must deny Ms. Roach the discharge of loans that she has worked diligently for and would be entitled to if her state of affairs, i.e. future potential income, did not look as bright as it was described by the expert witness who testified on behalf of the defendant.

Based upon the *Brunner* test, the court concludes that Ms. Roach has not proved that undue hardship will result unless her student loans are discharged. Accordingly, her loans are not dischargeable under Section 523(a)(8). A separate judgment will be entered.

---

**52.** *See, e.g. Educational Credit Management Corp. v. Carter,* 279 B.R. 872, 876 (M.D.Ga.2002)(Partial discharge of student loans is not allowed.); *In re Pincus,* 280 B.R. 303 (Bankr.S.D.N.Y.2002)(same); *Illinois Student Assistance Com'n v. Cox,* 273 B.R. 719, 724 (N.D.Ga.2002)("... [S]tudent loans are either dischargeable or non-dischargeable."); *In re Mallinckrodt,* 260 B.R. 892 (Bankr.S.D.Fla.2001), *reversed on other*

grounds, *In re Mallinckrodt,* 274 B.R. 560 (S.D.Fla.2002)("To authorize partial discharges is tantamount to judicial legislation and is something that should be left to Congress, not the courts."); *In re Skaggs,* 196 B.R. 865, 867 (Bankr.W.D.Okla.1996)("[T]he court's authority to determine dischargeability of student loans is limited strictly to a determination of whether a discharge of the entire debt is required").