In re Christopher T. JOHNSON and Marquesa D. Johnson, Debtors.

Christopher T. Johnson and Marquesa D. Johnson, Plaintiffs,

v.

Educational Credit Management Corporation, Mercer University, and General Revenue Corporation, Defendants.

Bankruptcy No. 01–51451–JDW.
Adversary No. 02–5068.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

July 18, 2003.

Christopher T. Johnson, Eatonton, GA, pro se for debtors.

Thomas W. Joyce, Macon, GA, for Educational Credit Management Corp.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Christopher T. and Marquesa D. Johnson's complaint to determine dischargeability of student loans. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Between 1985 and 1989, Christopher Johnson incurred student loan debt totaling $12,160.89. His wife, Marquesa Johnson, borrowed approximately $1,800 in student loans. The current amount owed on both loans, including accrued interest, is approximately $36,322. There is no evidence as to the current balance of the Johnsons' respective loans. Therefore, they will have to be considered together in the adversary proceeding as one loan with two obligors.

Mr. Johnson used his loans to obtain a bachelor's degree in criminal justice at Mercer University. He has been employed for the past 7 years as a corrections officer for the Georgia Department of Corrections. Mrs. Johnson runs a beauty salon in Gray, Georgia. They have two children, a 9–year–old daughter, Krishindra, and a 14–year–old son, Zontrell.

The family's income consists of Mr. Johnson's salary, Mrs. Johnson's profit from her beauty salon, and supplemental security income ("SSI") benefits received by Zontrell due to an unspecified disability.[1] Mr. Johnson's current annual salary is $25,896. From that, he nets $830 every two weeks, or approximately $1,798 per month. Mrs. Johnson receives approximately $660 as gross income from her beauty salon. After expenses, she nets approximately $270 per month. Zontrell receives $504 per month in SSI, subject to change based on the family's income. This amounts to a monthly net income of $2,572. For the past six years, the Johnsons have received federal income tax refunds ranging from $2,722 to $4,473. However, in order to maximize his take-home pay, Mr. Johnson has ceased having state and federal taxes withheld from his paycheck. Thus, he cannot count on receiving tax refunds in the future and is likely to find himself liable for income taxes with no accrual of funds to make payments.

The Johnsons' monthly expenses average as follows: $393 for mobile home rent, $98 for purchase of land, $255 for electric service, $40–65 for water service, $100 for telephone service (because they live in a rural area, the majority of their phone calls are long distance), $40 for cable (again, because they live in a rural area, they are unable to pick up local channels), $40 for miscellaneous household items, $360–450 for groceries, $180 for medical bills, $365 for gasoline for two vehicles, $80 for tithes to their church, $70 for homeowner's insurance, $26 for life insurance, $170 for car insurance, $15 for automobile tags, $18 for property tax, $367 for payments on Mrs. Johnson's Mazda Protege, $35 for Krishindra's school-related expenses, and $16 in bank fees. This totals $2,668 to $2,783.[2] In addition, in order to

---

1. Mr. Johnson testified that Zontrell suffers from attention deficit disorder, but did not indicate that this condition is the basis for the SSI payments.

2. The Court notes that these numbers do not include any expenditures for clothes or recreation. In addition, during the trial, there were references to payments being made by the debtors on Mr. Johnson's truck. Howev-

maintain Mrs. Johnson's beautician's license, the debtors paid $25 per month toward her student loan from 1999 to 2001. They stopped making those payments because they could no longer afford to do so. Furthermore, the Johnsons currently are attempting to place Zontrell in a private school to accommodate a learning disability. The total cost for four years at the school would be $1,489 or approximately $31 per month. No evidence has been presented as to the monthly payments due on the student loans, which are accruing interest at 8 percent.

Mr. Johnson has worked for the Department of Corrections for 7 years and has reasonable expectations for continued employment. He began as a CO–1, and after 18 months, he was automatically promoted to the position of CO–2. During the past 7 years he has received annual raises of 4 percent. However, due to the recent economic downturn, raises have been reduced to 3 percent. Although he has future opportunities for promotion, any resulting increase in salary would be minimal, approximately $100 per month. Some people who have been in junior positions for several years earn more money than those in senior positions who have worked at the agency for less time. Thus, regardless of his position, Mr. Johnson's salary will be based more on longevity with the agency than on job title.

Mr. Johnson testified that his wife suffers from numerous medical conditions that limit her ability to work, including diabetes and hypertension, which require medication. Although she has not sought a legal determination of disability, she has no expectation that her condition and ability to work will improve in the future.

The Johnsons are qualified for the William D. Ford Federal Direct Loan Program, under which their loans could be consolidated. The program offers four repayment options, including the income contingent repayment plan ("ICRP"), which is computed based on loan balance and the extent to which the debtor's adjusted gross income ("AGI") exceeds the poverty level for a family of the same size as the debtor's. If, in any year, the debtor's AGI falls below the poverty level, he makes no payments for that year. Any balance remaining after 25 years is cancelled. The Johnsons are eligible for the ICRP, but have declined to participate in it. Based on their 2001 AGI, they would owe $15.55 per month under the ICRP. Based on their 2002 AGI, they would owe $0.

The Johnsons filed a joint Chapter 7 petition on April 5, 2001. They received a discharge on July 18, 2001, and the case was closed. On October 15, 2001, the Court reopened the case to allow the Johnsons to file this adversary proceeding. The Court held a trial on June 24, 2003. Having considered the evidence and legal arguments, the Court determines that the Johnsons' student loans are dischargeable.

### Conclusions of Law

A Chapter 7 discharge does not discharge a student loan unless the loan creates an undue hardship for the debtor and his dependents.[3] The Bankruptcy

---

er, the amount of such payments was not disclosed.

**3.** Section 523(a)(8) provides as follows:
   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
      (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose

Code does not define "undue hardship." However, the courts in this district consistently refer to the *Brunner* test to analyze a Section 523(a)(8) claim.[4] *Educational Credit Mgmt. Corp. v. Carter,* 279 B.R. 872, 875–76 & n. 1 (M.D.Ga.2002). To satisfy *Brunner,* the debtors must show that (1) they "cannot maintain, based on current income and expenses, a 'minimal' standard of living" for themselves and their children if obligated to repay their loans; (2) "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period," and (3) that they have made "good faith efforts to repay the loans." *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987). This Court does not consider these *Brunner* elements to be either exhaustive or conclusive. Failure to satisfy one or more of the elements, however, is likely to seriously undermine a debtor's prospects for discharge. The burden is on the plaintiffs to prove their case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

**1. Minimal standard of living.** The first element of the *Brunner* test "requires an examination of the debtor's current financial condition." *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993). The Johnsons have introduced evidence to show that even absent student loan payments, their expenses exceed their income. Their lifestyle is far from extravagant, with the majority of their money being spent on the basic necessities of life. Their high phone bill and cable bill are a consequence of living in a rural area and cannot be considered excessive or lavish. Likewise the small $31 expense of private schooling for Zontrell to accommodate his learning disability is not unreasonable, especially considering his contribution to the family income in the form of his SSI benefits. The Court finds that the Johnsons currently are not able to maintain a minimal standard of living. Repayment of student loans would only exacerbate an already precarious financial situation.

**2. Likelihood that state of affairs will persist.** This element is a difficult one to prove as it requires a showing that the debtor will be completely unable to pay his student loan debt in the future for reasons beyond his control. *Carter,* 279 B.R. at 877. "[T]he dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Id.* (quoting *Roberson,* 999 F.2d at 1136) (internal quotation marks omitted). To analyze this element, the Court must project the Johnsons' income over an extended time period. "Such projections rest as much on evidence of future income prospects ... as on common sense and experience, which are both highly subjective." *Rivers v. United Student Aid Funds, Inc. (In re Rivers),* 213 B.R. 616, 619 (Bankr.S.D.Ga.1997) (Walker, J.).

Mr. Johnson has been employed by the Department of Corrections for 7 years and likely will remain employed there for the foreseeable future. During this time, his income has increased by approximately 4

---

an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C.A. § 523(a)(8) (West Supp.2003).

4. While the *Brunner* analysis has been widely criticized, no suitable alternative has gained acceptance as a standard. These questions of "undue hardship" are decided on a case-by-case basis with results that may appear to all the world as subjective and not sufficiently predictable. Regretfully, it seems there is no way to fairly consider the diverse circumstances of debtors and apply an objective standard.

percent per year, and he expects to receive similar annual raises in the future. Although Mr. Johnson may be eligible for promotions in the future, the evidence indicates that such promotions do not include a significant increase in pay. In fact, some employees who have been in junior positions over the long term earn more money than those in senior positions who have been with the department for a shorter amount of time.

Mr. Johnson testified that Mrs. Johnson has medical problems that interfere with her ability to work full time and that these problems are likely to persist. However, he offered no evidence to corroborate his testimony. "Although [corroborating] evidence does not have to necessarily consist of extensive expert testimony, such evidence should consist of more than simply bare allegations; that is, whenever a debtor's health, whether mental or physical, is directly put at issue some corroborating evidence must be given supporting the proponent's position." *Swinney v. Academic Fin. Servs. (In re Swinney)*, 266 B.R. 800, 805 (Bankr.N.D.Ohio 2001) (citing Fed.R.Evid. 701). "Medical records which substantiate the debtor's testimony may be sufficient." *Hoskins v. Educational Credit Mgmt. Corp. (In re Hoskins)*, 292 B.R. 883, 888 (Bankr.C.D.Ill.2003). In this case, the debtors attached some medical records to an objection to Defendant's motion to open default. However, those records were not proffered at trial and have not been admitted into evidence. As a consequence, they cannot corroborate Mr. Johnson's testimony. Thus, the Court will consider she is capable of continuing to earn a net of $270 per month from her beauty salon business.

The Court recognizes that as both children reach their majority they presumably will no longer rely on the Johnsons financially. However, the Court must also consider that when Zontrell reaches a position of financial independence, the Johnsons will no longer have the benefit of his SSI payments, which currently account for approximately 20 percent of the family's income. In addition, while it "might be a significant financial event" to the Johnsons for their children to reach majority, "it is likely over this same period of time that [the Johnsons'] 'minimal standard of living' will increase with [their] maturing personal and vocation circumstances." *Rivers,* 213 B.R. at 620. "If [the Johnsons] standard of living is to be fairly considered over such a long period, it cannot remain static . . . ." *Id.*

In this case, Mr. Johnson's income will likely steadily increase each year. Although the Court is mindful of Mrs. Johnson's alleged health difficulties, the preponderance of the evidence indicates that she is able to contribute to the family's income. Furthermore, as the children reach their majority, their vehicles are paid off, and their land is paid off, their expenses will decrease. However, this shift in income to expense ratio will not be significant enough to enable the Johnsons to repay their student loans in full.

■ **3. Good faith effort to repay.** The third element of the *Brunner* test generally is "measured by [the debtor's] efforts to obtain employment, maximize income, and minimize expenses." *Roberson,* 999 F.2d at 1136. It does not require a showing of actual payments. *McGinnis v. Pennsylvania Higher Educ. Assistance Agency (In re McGinnis)*, 289 B.R. 257, 267 (Bankr.M.D.Ga.2003).

■ Defendant has advanced the position that the good faith element also requires the debtors to participate in the ICRP if they qualify for it. Some courts have found the debtor's willingness to do so to be a significant factor in the good faith analysis. *Pennsylvania Higher*

*Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 500 (9th Cir. BAP 2002) ("Good faith is also measured by a debtor's effort-or lack thereof-to negotiate a repayment plan."); *United States Dep't of Educ. v. Wallace (In re Wallace)*, 259 B.R. 170, 184 (C.D.Cal.2000) ("A debtor's good faith can be measured by evaluating how he responded to repayment opportunities that were presented to him."). The Court agrees that participation in IRCP would be evidence of the debtors' good faith. However, failure to participate does not conclusively prove bad faith, particularly in the Johnsons' circumstances. "In this case, consolidation would be an act of futility. Debtor[s] simply [have] no funds available to make *any* payments." *Waterston v. Pennsylvania Higher Educ. Assistance Agency (In re Waterston)*, No. 01–3260DWS, 2002 WL 31856714, at *8 (Bankr.E.D.Pa. Nov. 26, 2002). If the Johnsons' willingness to participate in the IRCP were determinative of good faith, the careful reasoning and consideration the Court is required to give a Section 523(a)(8) analysis would be replaced by an administrative agency's formula that would attempt to account for the specific circumstances of individual debtors. If Congress had intended the question of dischargeability of student loans to be delegated to a nonjudicial entity, no matter how fair its formulas and intentions may appear, it could have provided for such. As attractive as it may be to postpone the decision and to rely on the long-term supervision afforded by the ICRP and the apparent fairness of its continuing review of a debtor's income as compared to the established poverty standard, the Court will discharge its duty as provided in the Code and make a present determination of dischargeability.

Having determined that a debtor's good faith does not rest exclusively on his willingness to participate in the ICRP, the Court now considers whether the Johnsons have made such a good faith effort. As noted above, the Johnsons' income only allows for basic necessities, a circumstance that necessarily satisfies the requirement for a debtor to minimize expenses. Mr. Johnson has maintained steady employment for the past 7 years. Mrs. Johnson, however, has worked only sporadically-at most, one day per week. This was explained by Mr. Johnson's uncorroborated testimony as to Mrs. Johnson's many health problems. Because the testimony was uncorroborated, the Court is compelled to speculate as to the Johnsons' prospect for future income. Whatever may be the history of Mrs. Johnson's medical condition, her work history is undisputed. In undertaking the speculation required by Section 523(a)(8), there would be no evidentiary basis to conclude that she would secure and maintain full-time employment for the first time in recent years.

With respect to the IRCP, the Johnsons have refused to participate in the plan. However, this refusal is not conclusive of bad faith. The Johnsons have shown that their minimal expenses exceed their income. Nevertheless, under the IRCP, they still would have been obligated to pay $15.15 based on their 2001 AGI. The Court can hardly fault the debtors in this case from seeking a discharge rather than participating in the IRCP when they did not have the funds available to make even the modest $15.15 payments. The futility of participating in the IRCP along with the Johnsons' efforts to minimize their expenses and maximize their income demonstrates that they have made a good faith effort to repay their student loans.

**4. Repayment of loans in full.** Full repayment of this loan with accrued interest is unlikely over the next 25 years. Even if the Johnsons' financial situation improves in later years when the children

become self-supporting, so too will the loan balance increase over the years of nonpayment. These circumstances cry out for partial discharge. However, contrary to my prior holding in a case in the Southern District of Georgia, *Rivers*, 213 B.R. at 618, the District Court for the Middle District or Georgia recently employed a strict reading of Section 523(a)(8) and rejected the use of partial discharge. *Carter*, 279 B.R. at 876–77. As a consequence, if this Court finds that the debtors cannot repay their student loans in full, the Court must discharge the loans in their entirety.[5]

The question of whether the debtors can repay their loans in full is complicated by the availability of the ICRP. Defendant argues that the complete repayment required by a strict reading of Section 523(a)(8) is not defined by the principal and interest amount of the loan but instead by the repayment requirements of the ICRP. In other words, Defendant proposes to merge the provisions of ICRP with the terms of the note so the two are considered together as the "obligation to repay funds." Based on the undisputed evidence, the Johnsons qualify for the ICRP. Furthermore, based on their present circumstances, their payments would be $15.15 at the most and $0 at the least. Their payments would increase only if their income increases in relation to the poverty level, and after 25 years, any remaining balance on the loans would be forgiven. The Court is mindful that Congress structured Section 523(a)(8) to make student loan discharge very difficult. However, the very existence of that section

indicates that such discharge pursuant to an adversary proceeding such as this one was not meant to be impossible. If the Court were required to consider whether the debtor could pay through the ICRP over the long term, the bar for discharging student loans would be so high that, in practice, no debtor could reach it.

■ Furthermore, the ICRP essentially forces a debtor who has no ability to pay his student loans in full to defer discharge for 25 years. "[T]he retention of that burden is inconsistent with the fresh start policy of the Bankruptcy Code that Debtor has invoked." *Waterston*, 2002 WL 31856714, at *8. As a result, to determine whether the debtor will be able to maintain a minimal standard of living for the duration of the loan term, the Court will consider whether the repayment of those loans in full under the debtor's current and foreseeable future circumstances would create an undue hardship without reference to the ICRP.

The evidence demonstrates that the Johnsons are now and for the foreseeable future unable to repay the loans in full. Thus, discharge of the entire indebtedness is compelled by the law in this district.

An Order in accordance with this Opinion will be entered on this date.

5. There is some dispute about whether a bankruptcy court is bound by the decisions of a single district court judge in a multi-judge district. Regardless of the status of such decisions as binding precedent, I believe such decisions are entitled to extreme deference closely akin to precedent. As such, in the absence of a compelling reason to hold otherwise and in the interest of predictability, I intend to follow the relevant decisions of a district court judge from the district where the case is pending. If two or more judges should issue conflicting opinions in such a district, I intend to follow the most recent such decision.