## In re Elizabeth Ann KENNY, Debtor.

See e.g. *United States v. Binkley (In re Binkley)*, 242 B.R. 728 (M.D.Fla.1999).

9.

Elizabeth Ann Kenny, Plaintiff,

v.

New Jersey Higher Education, Suntrust Bank Inc., and Hemar Insurance Corporation of America, Defendants.

Bankruptcy No. 03–62949.
Adversary No. 03–80313.

United States Bankruptcy Court,
N.D. New York.

June 2, 2004.

David J. Gruenewald, Esq., Manlius, NY, for Debtor/Plaintiff.

Getnick, Livingston, Atkinson, Gigliotti & Priore, LLP (Joseph A. De Traglia, Esq., of counsel), Utica, NY, for New Jersey Higher Education.

Whiteman, Osterman & Hanna LLP (John J. Henry, of counsel), Albany, NY, for Suntrust Bank Inc.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Under consideration by the Court is the complaint ("Complaint") filed by Elizabeth Ann Kenny ("Debtor") on July 25, 2003, seeking to discharge certain student loans pursuant to Section 523(a)(8) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). An answer to the Complaint was filed on behalf of the New Jersey Higher Education Assistance Authority ("NJHEAA") on August 29, 2003. NJHEAA filed an amended answer on September 2, 2003, asserting an affirmative defense that the action was barred by the Eleventh Amendment to the U.S. Constitution.[1] An answer was also filed on behalf of Help Service Group, Inc. ("HSG"), as assignee of HEMAR Insurance Corporation of America, on September 2, 2003. On September 18, 2003, an answer was filed on behalf of Educational Credit Management Corporation ("ECMC"), as assignee of Suntrust Bank, Inc.[2]

The trial of the adversary proceeding was initially scheduled to be held on January 5, 2004. It was subsequently adjourned to April 26, 2004, and ultimately held on May 10, 2004, in Utica, New York. At the trial, the parties appearing[3] stipulated to the admission of certain exhibits.

The Debtor was the only witness to testify in support of her Complaint. Following her testimony, counsel for both ECMC and NJHEAA, without calling any witnesses in defense of the Complaint, moved to dismiss the Complaint on the grounds that the Debtor had failed to meet her burden of proof pursuant to Code § 523(a)(8) under the test set forth by the U.S. Court of Appeals for the Second Circuit in *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395 (2d Cir.1987). The Court reserved on the motion and allowed the parties two weeks to file post-trial memoranda of law. The matter was submitted for decision on May 28, 2004.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1134(b), 157(a), (b)(1), and (b)(2)(I) and (O).

### FACTS

The Debtor filed a voluntary petition ("Petition") seeking relief pursuant to chapter 7 of the Code on April 29, 2003.

---

1. NJHEAA's defense is without merit based on the recent decision of the U.S. Supreme Court. *See Tennessee Student Assistance Corp. v. Hood*, —— U.S. ——, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004). In *Hood* the Supreme Court held that a determination based on undue hardship pursuant to Code § 523(a)(8) "is not a suit against a State for purposes of the Eleventh Amendment." *Id.* at 1912–13.

2. On May 24, 2004, the Court received a copy of a facsimile transmission from counsel for ECMC to Debtor's counsel indicating that those parties were going to stipulate to a discontinuance of the Adversary Proceeding. As of the date hereof, no stipulation has been presented to the Court.

3. HSG did not participate in the trial. According to HSG's answer, the outstanding balance on its educational loans was $21,636.16 as of August 12, 2003. *See* HSG's Answer at ¶ 3. At the trial, the Debtor testified that an agreement had been reached with HSG whereby the Debtor was to pay $17,500 to HSG over time by making monthly payments of $100.

At the time of the trial, the Debtor was 41 years of age. She resides in Waterville, New York, with her husband, Delmar Barnes ("D.Barnes"), and two children ages 11 and 9. Also living with the couple is a son from D. Barnes' prior marriage, Jason Barnes. Jason was to turn 21 years old on May 18, 2004. The Debtor testified that both her husband and Jason are students at the State University of New York ("SUNY") at Morrisville. D. Barnes was expected to graduate in May 2005 with a degree in computer science. According to the Debtor, none of the members of the family suffer from any type of physical disability.

*Educational History*

The Debtor graduated from the University of Scranton, Scranton, Pennsylvania, in 1985 with a Bachelor of Science degree in finance and economics. In 1989 she enrolled in Seton Hall University School of Law, Newark, New Jersey, attending night classes over a period of four years and graduating in May of 1993 with a Juris Doctorate.

She is admitted to practice law in New Jersey and has made application for admission in New York, having passed the bar examination in February 2003. The Debtor testified that she had also been admitted to practice law in Pennsylvania but resigned from the bar in that state due to the time and expense necessary to maintain her license.

*Employment History*

Following graduation in 1985 from the University of Scranton, the Debtor testified that she worked for a New York City brokerage firm as a repurchase agreement trader. The Debtor testified that she made payments on her undergraduate loans of approximately $120 per month until 1989 when she began law school. She continued working for the brokerage firm during her first year in law school and was earning approximately $35,000 per year when the company went out of business and she was laid off. Some time after her first year of law school and while still attending night classes, she obtained employment with a local law firm handling no asset bankruptcy cases. According to the Debtor, she was terminated after approximately six months.

At or about the time the Debtor graduated from law school in 1993, she had one child and became pregnant with a second child, making employment difficult. Ultimately, she obtained employment on a per diem basis for approximately 1½ years. It is alleged in her Complaint that she earned $18,469 in 1994 and $5,962 in 1995. In January 1996 she obtained employment as an associate at a law firm, earning $45,000. It was the Debtor's testimony that she was again terminated after approximately a year. She was self-employed for approximately two years, practicing primarily matrimonial and real estate law, earning between $8,000 and $10,000 per year.

The Debtor testified that in June 1998 she accepted a position with a law firm in Denville, New Jersey, specializing in land use law.[4] She testified that she worked there for approximately a year, earning $40,000 a year. It was her recollection that during that period she made payments of approximately $300 per month on her student loans. However, as a result of her husband being laid off in 1999, she was forced to resign her position as an associate with the firm in order to relocate to Central New York.

---

4. According to the Debtor's answers to interrogatories, her employment was from June 15, 1998 through July 13, 1999. *See* Debtor's Responses to Interrogatories (ECMC's Exhibit 1) at ¶ 3.

According to the Debtor's Complaint, she did not work from June 1999 through February 2001. *See* Complaint at ¶ 10. However, according to her responses to interrogatories, she was self-employed from July 1999 through December 1999 and from September 2000 through February 2001. *See* Debtor's Responses to Interrogatories (ECMC's Exhibit 1) at ¶ 3. In addition she worked as a waitress from February 2001 until June 2002, earning $7.00 per hour plus gratuities. *Id.* In June 2002 she obtained employment with New York Central Mutual Fire Insurance Company as a litigation examiner. She testified that initially she was earning $37,500, but after passing the bar examination in New York in February 2003, she was given a $5,000 raise. It was the Debtor's testimony that in order to continue her employment it is necessary that she be admitted in New York.

She currently earns $44,000 per year working for New York Central Mutual Fire Insurance Company. According to her Statement of Financial Affairs, she earned $11,600 in 2001; $30,833 in 2002, and $9,500 through April 2003, when she filed her Petition.

The Debtor testified that in 1999 her husband earned approximately $65,000 for a company in New Jersey before being laid off. In 2000 he earned $47,700, working for Special Metals Corporation in New Hartford, New York. In 2001 he took a pay cut, earning approximately $38,000 per year before being laid off in January 2002. In 2003 his only income was from unemployment benefits. Debtor's Responses to Interrogatories (ECMC's Exhibit 1) at ¶ 9.

*Student Loans*

On or about February 22, 1992, the Debtor obtained a loan from NJHEAA in the amount of $7,500. *See* NJHEAA's Exhibit A. She also obtained a loan from NJHEAA in the amount of $7,500 on or

about November 7, 1992. *See* NJHEAA's Exhibit B. According to the Debtor, she had actually obtained three loans for $7,500 during law school, all of which are held by NJHEAA. This comports with the listing of loans of the Debtor as set forth in Debtor's Exhibit 3, which includes a loan dated November 25, 1990, in addition to the two obtained in 1992. *See* Debtor's Exhibit 3. In addition, there are also loans obtained by her while an undergraduate at the University of Scranton between 1981 and 1985 totaling approximately $9,000 in principal. *See id.* According to the Debtor's testimony, these are also held by NJHEAA. According to NJHEAA's counsel, the balance on all of its loans was $58,730.77 as of May 7, 2004.

The Debtor testified that she had obtained a loan from Suntrust Bank, Inc., from whom ECMC had taken an assignment, in 1993 for $4,000, the proceeds of which she used during the period she was studying for the bar examination. On January 24, 2001, the Debtor agreed to participate in the Federal Loan Consolidation Program with respect to the loan. *See* ECMC's Exhibits 7 and 9. As of April 18, 2004, it was represented to the Court that ECMC was owed $10,268. *See* ECMC's Exhibit 9.

*Debtor's Income and Expenses*

At the time of the trial, the Debtor estimated that her monthly net income was $2,995 per month. As noted above, her husband currently has no income. It is anticipated, however, that upon graduation he will become employed and contribute to the household expenses. The Debtor testified that upon graduation her husband also will have approximately $30,000 in loans to payback. The Debtor also testified that her stepson, who as of the date of this Decision had turned 21, was earning approximately $30 per week through a work study program during the

school year. There was no testimony to indicate that he, in any significant way, contributes to the household expenses. However, the Debtor's expenses include not only food for five people, rather than four, but they also include car maintenance and insurance on his car, as well as gas for that car.

At the time the Debtor filed her Petition in April 2003, she estimated that her monthly expenses totaled $2,495. As of the date of the trial on May 10, 2004, the Debtor testified that her current expenses totaled $3,518 for a family of five, an increase of $1,023 per month. *See* Debtor's Exhibit 2. These included an increase in electricity and heating costs of $35 per month; a decrease in telephone costs which was offset by additional internet charges associated with the course work of both the Debtor's husband and stepson for a total monthly increase from one year ago of $25; food costs had increased $150 from $650 to $800 per month; costs associated with the family's four automobiles, including gas and maintenance, amounted to $700, a monthly increase of $300. *Id.* Automobile insurance, however, had decreased from $370 per month to $250 per month. *Id.* The Debtor testified that there was no collision on any of the automobiles, all of which had in excess of 100,000 miles on the odometers. There were also additional expenses for life insurance, renters' insurance, gifts, hair care, credit cards, and, as mentioned earlier, the $100 per month payment to HSG. *Id.* According to the Debtor, she and her family rent a house from her father-in-law and over the past year, the rent has remained $500 per month. Based on the Debtor's estimates, her monthly expenses exceed her net income by $523.

## DISCUSSION

▆▆▆ "[T]here is a presumption that educational loans extended by or with the aid of a governmental unit or nonprofit institution are nondischargeable in bankruptcy in the absence of undue hardship to the debtor or the debtor's dependents." *Nys v. Educational Credit Mgmt. Corp.*, 308 B.R. 436, 441 (9th Cir. BAP 2004). The courts, in considering the dischargeability of student loans, have made it clear that "undue hardship" requires the debtor to establish more than mere financial adversity. To this end, the Court of Appeals for the Second Circuit has set forth the standard to be applied in determining "undue hardship" in connection with the dischargeability of a debt for a student loan pursuant to Code § 523(a)(8). *See Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d at 396.[5]

▆▆ Under the *Brunner* test, the Debtor must prove each of three elements. *Nys*, 308 B.R. at 441. These elements include

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [herself] and [her] dependents if forced to repay the loans; (2) that additional circum-

5. The *Brunner* "undue hardship" three-pronged test has been accepted by other circuits as well. *See, e.g., Educational Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302 (10th Cir.2004); *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir.2003); *Hemar Insurance Corp. of America v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir. 2003); *Ekenasi v. The Education Resources Instit. (In re Ekenasi)*, 325 F.3d 541 (4th Cir. 2003); *Saxman v. Educational Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168 (9th Cir.2003); *Goulet v. Educational Credit Mgmt. Corp.*, 284 F.3d 773 (7th Cir.2002), *reh'g and reh'g en banc denied*, 82 Fed.Appx. 220 (11th Cir.2003), *cert. denied*, — U.S. ——, 124 S.Ct. 2016, 158 L.Ed.2d 496 (2004); *Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324 (3d Cir. 2001).

stances exist indicating this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396.

### Minimum and Maximum Analysis

■ The first prong of the *Brunner* test requires the Court to examine whether the Debtor has demonstrated that she is unable to earn sufficient income to maintain herself and her family *and* repay the educational debt. *Id.* In this regard, the Debtor must establish that not only has she minimized the family's living expenses, but also that they have maximized their personal and professional resources.

■ Currently, there exists a shortfall of approximately $500 per month between the Debtor's income and her household expenses. She is the sole support for a family of five. In this regard, her expenses appear reasonable. It is evident that she places a priority on having both her husband and her stepson further their education. That is a laudable goal, but the Court questions whether that should entitle her to discharge her obligations on her student loans in order to enable both her husband and stepson to attend classes full-time while contributing little or no income to the household. The situation appears further compounded by the fact that upon graduation her husband will also have student loans that will have to be repaid. The Court has serious reservations about making a finding that the Debtor met her burden of establishing the first prong of the *Brunner* test. Without reaching a conclusion, the Court will examine the second prong on which the Second Circuit in *Brunner* placed particular significance.

### Additional Circumstances

■ The second prong of the test requires that the court make a predictive judgment as to the likelihood that a debtor's financial hardship will continue for a significant portion of the repayment period. There are two elements to the second prong. The first is whether the debtor's financial difficulties are "likely" to continue. Under this standard, a debtor must establish by a preponderance of the evidence that the debtor's financial situation is not likely to improve; the debtor is not required to prove with certainty that the financial situation will not improve. The court's judgment on this question necessarily must be based on a consideration of the debtor's education, work history, health and other relevant circumstances. The second element of the second prong is that the financial difficulties must be likely to persist for a significant portion of the repayment period.

4 *Collier on Bankruptcy* ¶ 523.14[2], at 523–100 (Alan R. Resnick and Henry J. Sommer eds. 15th ed. Rev.2003).

■ Based on the evidence presented, the Court does not believe that the Debtor's current financial difficulties are likely to persist for a significant portion of the repayment period. She and her family are all in good health. She is 41 years of age and it is reasonable to believe that she will be working for at least another 20 years. She has a well paying job and over the years has been able to obtain legal employment. In a year, her husband is expected to graduate and obtain a position commensurate with his training and education. It is also anticipated that her stepson, now age 21, will be graduating in the next couple of years and also will be able to obtain employment and perhaps establish his own separate household. There is nothing in the evidence that supports the

existence of any unique or exceptional circumstances that would indicate a certainty of continuing hopelessness for the Debtor and her family. Accordingly, the Court concludes that the Debtor has failed to meet her burden of proof with respect to the second prong of the *Brunner* test.

*Good Faith*

Because the Court has determined that the Debtor has failed to meet her burden of proof with respect to the second prong, it need not reach a definitive conclusion as to the first prong or examine whether the Debtor has made a good faith effort to repay her student loans.

The Court concludes that the Debtor is not entitled to a full discharge of her student loan obligations pursuant to Code § 523(a)(8). The question then remains whether the Court should grant the Debtor a partial discharge of her student loans pursuant to Code § 105. Not all courts have allowed a partial discharge. *See, e.g., In re Blair*, 301 B.R. 181, 186 (D.Md.2003); *In re Roach*, 288 B.R. 437, 447–48 (Bankr. E.D.La.2003); *Cox, supra*, 338 F.3d 1238, 1243; *In re Brown*, 249 B.R. 525, 530–31 (Bankr.W.D.Mo.2000). *But see In re Saxman*, 325 F.3d 1168, 1173–74 (9th Cir.2003) (concluding that "bankruptcy courts may exercise their equitable authority under 11 U.S.C. § 105(a) to partially discharge student loans" provided that the debtor is able to establish undue hardship as to that portion of the debt sought to be discharged); *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 439 (6th Cir.1998); *In re Kapinos*, 243 B.R. 271, 275 n. 1 (W.D.Va.2000) (stating that the majority of courts have concluded that Code § 523(a)(8) permits partial discharge).

This Court previously indicated that it had discretion to consider the extent to which student loan debts are determined to be dischargeable, or, in the alternative, to order a deferment based on the debtor's current situation. *See In re Muto*, 216 B.R. 325, 331 (Bankr.N.D.N.Y.1996). In that case, one of the creditors had indicated a willingness to reduce the amount of the debt deemed to be nondischargeable. *Id.* The Court not only reduced the debt, it also provided that no interest accrue unless the debtors defaulted by failing to make the required payments within fifteen days of the due date. *Id.* at 331–32.

In *In re Stern*, 288 B.R. 36 (Bankr. N.D.N.Y.2002), this Court considered but rejected the possibility of granting a partial discharge to the Debtor. The Court examined " 'whether the debtor has tried to repay his student loan obligations since they were incurred, has made efforts to renegotiate the loans, to obtain deferments, and to minimize expenses and increase income.' " *Id.* at 43, quoting *East v. Educ. Credit Mgmt. Corp. (In re East)*, 270 B.R. 485, 495 (Bankr.E.D.Cal.2001).

In the case *sub judice*, the Debtor testified that she made payments on her loans following graduation from the University of Scranton until she entered Seton Hall University School of Law in 1989. She also testified that she recalled making payments while employed at a law firm in Denville, New Jersey, between 1998 and 1999. In addition, she apparently made arrangements to consolidate her loans with ECMC in January 2000. *See* ECMC's Exhibit 7.

The Debtor testified that she had contacted at least one credit counseling agency but because of the expense did not employ its services. There was no testimony concerning whether the Debtor had applied to the federal income contingent repayment program prior to filing bankruptcy. As observed by one court, "[u]nder federal statute and regulation, substantial educational loan debt can be

consolidated and reamortized over extended period of time through the William D. Ford Program." *See In re Lieberman,* 2003 WL 21397713 at *7 (Bankr. D.Minn.2003).

 As was the case in *Stern,* it appears that the Debtor has not taken advantage of various options to increase the affordability of her student loans. Under the circumstances, the Court concludes that it would be inappropriate to grant the Debtor a partial discharge. However, the Court is also cognizant of the Debtor's current financial situation in which she is making every effort to support her family on her income alone. The Court deems it appropriate to allow her a deferment for a period of one year, without additional accrual of interest, during which time she will have the opportunity to pursue alternative forms of repayment. *See In re Ciesicki,* 292 B.R. 299, 307 (Bankr. N.D.Ohio 2003) (granting a deferment of one year to allow the debtor to find employment); *In re Dennehy,* 201 B.R. 1008, 1013 (Bankr.N.D.Fla.1996) (allowing debtor to defer his payments on his student loans for two years without interest in order to allow the debtor "time to find employment and arrange his financial affairs in order"); *In re Heckathorn,* 199 B.R. 188, 196 (Bankr.N.D.Okla.1996) (deferring payment on student loans for five years with interest not to accrue during a three year period.) In a year's time, it is presumed that her husband will be in a position to contribute to the family income. It is also reasonable to assume that the Debtor's stepson will also be in a position to either contribute to the expenses of the household or to establish separate living arrangements.

Based on the foregoing, it is hereby

ORDERED that the Debtor's Complaint, to the extent that it seeks a total discharge pursuant to Code § 523(a)(8) of her student loan obligations to ECMC and NJHEAA, in the respective amounts of $10,268 and $58,730.77, is denied; it is further

ORDERED that the Debtor's Complaint, to the extent that it seeks a partial discharge pursuant to Code § 105 of her student loan obligations to ECMC and NJHEAA is denied: and it is finally

ORDERED that payment of the obligations to ECMC and NJHEAA be deferred until June 1, 2005, without the accrual of additional interest and/or penalty over that year.