**In re Kashima THOMS, Debtor.**

**Kashima Thoms, Plaintiff,**

v.

**Educational Credit Management Corp., Defendant.**

**Bankruptcy No. 00–40607 (AJG).
Adversary No. 00–8130 A.**

United States Bankruptcy Court,
S.D. New York.

Jan. 5, 2001.

Kashima Thoms, Riverdale, NY, Pro Se.

Pullman & Comley, LLC, Management Corporation, as Assignee, Bridgeport, CT (Sheila A. Denton, Holly G. Gydus, of Counsel), for Educational Credit.

*MEMORANDUM DECISION, AFTER TRIAL, REGARDING STUDENT LOAN OBLIGATIONS*

ARTHUR J. GONZALEZ, Bankruptcy Judge.

This adversary proceeding was commenced seeking a determination as to whether certain student loan obligations could be discharged, pursuant to 11 U.S.C. § 523(a)(8), based on a claim of "undue hardship." The Court finds that, under the facts of this case and considering the strict standard applied in this Circuit for a showing of "undue hardship," the requisite elements have not been established and the student loans in issue should not be discharged.

### FACTS

On March 8, 2000, Kashima Thoms (the "Debtor") filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code" or the "Code"). On April 14, 2000, the Debtor commenced this adversary proceedings against USA Group Loan Services, Inc. seeking a determination as to the dischargeability, pursuant to § 523(a)(8) of the Bankruptcy Code, of certain student loan obligations payable to USA Group Loan Services. By order, dated October 19, 2000, Educational Credit Management Corp. ("ECMC") was substituted as a party defendant in place of USA Group Loan Services, Inc. The title to the notes representing these loans had been transferred to ECMC as part of the specialized guarantor services that ECMC provides to the U.S. Department of Education under the Federal Family Education Loan Program. The Debtor commenced two other adversary proceedings against payees on certain other student loan obligations. The first of these additional adversary proceedings was filed against EFG Technologies, Inc. (Adv.Pro. No. 00–8129) and the other against Sallie Mae Servicing (Adv.Pro. No. 00–8131). A trial in the instant adversary proceeding was conducted on November 9, 2000, at which time it was disclosed that the student loan obligations in issue in all three adversary proceedings were now being administered by ECMC because title to the notes on these other student loan accounts were also transferred to ECMC.

At the conclusion of the trial held on November 9, 2000, the Court invited ECMC and the Debtor to submit proposed findings of fact and conclusions of law. In response, both parties filed supplemental pleadings.

The total currently due on all the Debtor's student loan obligations is $90,948.58. These obligations stem from fourteen separate, government-guaranteed loans that the Debtor obtained over a nine-year period from 1990 through 1998 to finance her attendance at college and graduate school. As a result, the Debtor received a bachelor's degree in psychology and a master's degree in social work. ECMC notes that its records reflect that the Debtor has only made seven payments totaling $683.69. These payments were made in the period from April 22, 1991 to January 1, 1993. Thus, no payments have been made since the Debtor received her masters's degree.

The Debtor is currently employed as a supervisor for social workers and earns $48,000 per year. Aside from a three-month period when the Debtor was unemployed from March to May 2000, she has worked steadily at full-time jobs since graduating from college. With each new employment that she accepted over that period came an increase in salary up until its current level. The Debtor's net monthly income is $2,878.58.

The Debtor rents an apartment for $950.00 per month. In addition to her five-year old son who resides there, her thirteen-year old sister and nine-year old brother also are temporarily residing with her.[1] The Debtor is not the legal guardian of her siblings and does not have legal custody of them. The Debtor testified that the father of her five-year old does not contribute to the child's support. Nor has the Debtor attempted to compel him to contribute.

In her bankruptcy schedules, the debtor listed $1,350.00 as her monthly expenses.

At trial, the Debtor testified that her monthly expenses were $2,325.00. The $975.00 increase was based upon a $100.00 increase in rent (from $850.00 to $950.00), a $40.00 increase in the phone bill (from $60.00 to $100.00), a $200.00 increase in the food expense (from $100.00 to $300.00), a $160.00 increase in transportation costs (from $40.00 to $200.00), and the following additional expenses that had not been listed in the bankruptcy schedules: $120.00 for car insurance, $50.00 for entertainment (cable), $225.00 her son's tuition cost; and $80.00 for after school childcare.

The Debtor argues that the student loan obligations in issue should be discharged because the continued obligation to pay such loans would cause her undue hardship. In opposition, ECMC argues that the student loan obligations should be not be discharged because the Debtor does not meet the requirements to establish undue hardship that would permit the discharge of these loans under the prevailing law in this Circuit.

## DISCUSSION

■ The discharge granted to an individual chapter 7 debtor under 11 U.S.C. § 727 (the "Bankruptcy Code") accomplishes the Bankruptcy Code's goal of affording an honest debtor a fresh start. *Johnson v. Edinboro State College*, 728 F.2d 163, 164 (3d Cir.1984). However, there are instances where more pressing policy considerations prevail over the "fresh start" goal. *Id.* Congress has determined to protect these other interests by excepting certain debts from discharge. 11 U.S.C. § 523(a). Included amongst the roster of debts excepted from discharge are student loans. 11 U.S.C. § 523(a)(8). The intent of this particular exemption is to prevent the undermining of the guaranteed student loan program. *Brunner v. New York State Higher Educ. Servs.*

---

1. The Debtor testified that another sister and that sister's infant resided with her; however, in her supplemental pleading, the Debtor stated that they had since moved out of the household.

*Corp.,* 46 B.R. 752, 756 (S.D.N.Y.1985), aff'd, 831 F.2d 395 (2d Cir.1987). This is accomplished by reducing bankruptcy defaults thereby assuring a continued recycling of funds for future low interest rate loans for students. *Elmore v. Massachusetts Higher Education Assistance Corp. (In re Elmore),* 230 B.R. 22, 25–26 (Bankr. D.Conn.1999).

■ The student loan program allows individuals, who seek to advance their education but who might not otherwise have access to funds for such purpose, to obtain funds with the government as guarantor of the loans. *Id.* However, in return for the government guaranteeing these high risk loans, the student is required to repay the loan "regardless of his or her subsequent economic circumstances ... [and without] the refuge of bankruptcy in all but extreme circumstances." *Id.* The student must make a cost-benefit analysis of whether "the risks of future hardship outweigh the potential benefits of a deferred-payment education." *Id.* Thus, the borrower has the burden of evaluating the investment and bears the risk of an imprudent decision. *Brunner,* 46 B.R. at 756 n. 3.

Section 523(a)(8) of the Bankruptcy Code provides, in relevant part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

■ Pursuant to this section, the only situation that would allow a debtor to avoid the nondischargeability of a student loan would be a showing that requiring payment of such loan would impose an "undue hardship on the debtor and the debtor's dependents." The debtor has the burden of proof on the issue of undue hardship. *Elmore,* 230 B.R. at 26.

■ The Second Circuit applies a three-part test to determine whether an individual has established "undue hardship." The elements that must be shown are:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396.

■ The first element requires a debtor to show that if the debtor, based on current finances, is required to make the monthly student loan payment, the debtor's standard of living will "fall below a 'minimal' level." *Brunner,* 46 B.R. at 754. To evaluate this element, the court must review current income and expenses considering the particular circumstances of the case. *Elmore,* 230 B.R. at 26. The debtor must show more than that the repayment of the loan will require him or her to forbear significantly in personal and financial matters or that the debtor will endure a restricted budget. *Elmore,* 230 B.R. at 26.

■ Moreover, even if the debtor shows a current inability to pay the student loan, that is not by itself sufficient to establish "undue hardship." Rather, the second requirement of additional, exceptional circumstances suggests that the debtor must also evidence a "continuing inability to repay over an extended period of time." *Brunner,* 831 F.2d at 396. This further requirement serves the purpose of making

the discharge of student loans more difficult to obtain and insures that the hardship is "undue." *Id.*

 The type of "additional circumstance" that would affect the debtor's continuing ability to repay would be a circumstance that impacted on the debtor's future earning potential but which was either not present when the debtor applied for the loans or has since been exacerbated. Otherwise, the debtor could have calculated that factor into its cost-benefit analysis at the time the debtor obtained the loan. An example of an additional circumstance impacting on the debtor's future earnings would be if the debtor experienced an illness, developed a disability, or became responsible for a large number of dependents after receiving the loan.

 The third element requires a showing that the debtor made a good faith effort to repay the student loan. In considering this factor, in addition to reviewing actual payments made on the loan, courts consider whether the debtor has attempted other remedies available such as requesting deferment of payment. *Brunner,* 831 F.2d at 397. Moreover, to establish good faith, the default cannot stem from the debtor's wilful conduct or the debtor's neglect. Rather, it must result from factors beyond the debtor's reasonable control. *Elmore,* 230 B.R. at 27. The debtor must prove its efforts "to maximize income and minimize expenses." *Elmore,* 230 B.R. at 27.

 Applying the *Brunner* analysis to the facts of this case, even allowing for the Debtor's own higher estimate at trial of her current monthly expenses, she still has approximately $550.00 available, a major portion of which could be applied towards the payment of her student loans. Although this is not enough to pay the monthly amount due on the student loans according to their current payment terms, there are many options available to the Debtor to attempt to restructure the debt wherein this amount could be used to re-

duce the debt. ECMC referred to the U.S. Department of Education's website which sets forth various payment plan options available to a debtor who finds its current loan obligations too burdensome. Included are graduated extended or income contingent repayment plans, the latter being tied to a debtor's income. Also offered is the opportunity to have a direct consultation to try to work-out a suitable payment arrangement. ECMC indicated that the Debtor did not avail herself of any of these opportunities to attempt to restructure the student loan debt. In any event, it has been shown that the Debtor has excess funds even under her estimate of expenses and that she can maintain a "minimal" standard of living while making student loan payments.

With respect to the second *Brunner* element which requires the Court to consider factors that may impact on the Debtor's future ability to repay the loan, indications are that the Debtor's financial situation may likely improve. First, she sees the possibility that her two siblings will be able to return to their own home. Moreover, the Debtor has acknowledged that the $225.00 tuition cost will be eliminated when her child attends public school in September. The Debtor testified that the primary reason she sent her child to private school was because of child-care considerations in that the local public school did not have an all-day kindergarten. However, the Debtor further testified that by next school year her child could attend public school for an all-day session and her child-care concerns during school-day hours can be addressed without a required tuition payment. The reduction of the tuition cost, when added to the $550.00 currently available in her budget, would make available approximately $775.00 per month after the payment of her essential expenses. The Debtor has improved her financial picture with each new employment opportunity and has acknowledged the likelihood that even if she remains in her current position, there is potential for

financial advancement. Thus, the Debtor's ability to repay the loans will likely improve and permit for larger payments over an extended period of time.

The Debtor has expressed concerns about her employment in a customarily low paying profession and the possibility that she may be a target of downsizing in her field. However, ECMC has indicated its willingness to work with the Debtor to restructure her payment obligations based upon her financial condition. Therefore, if the Debtor's financial situation were to decline, she could again approach ECMC to consult on repayment schedules available through the U.S. Department of Education. Furthermore, the Debtor retains whatever rights she may have pursuant to Fed. R. Bankr.P. 4007(a) & (b).

The third element for establishing undue hardship requires a finding concerning good faith efforts to repay the loan. While the Debtor has sought some deferments, she has not, as previously discussed, attempted to avail herself of the other payment options available even though she has funds in excess of her budget to apply to payment of these loans. In addition, the Debtor only made seven payments totaling $683.69 from 1991 to 1993 and has made no payments at all since receiving her master's degree in social work. Moreover, the Debtor has not entirely maximized her income because she has not adequately explained her failure to seek child support for her five-year old from the child's father. Nor has she explored avenues of support for her siblings. The Debtor has not established a good faith effort to repay the student loans.

Finally, the Debtor requests that the Court explore alternatives to afford the Debtor "an opportunity to successfully manage [her] student loan debt." However, this opportunity is available to the Debtor in the form of consultation with ECMC on the various payment options from which she may select to repay her student loan obligations.

## CONCLUSION

The Debtor has not established the criteria required for a showing, pursuant to § 523(a)(8) of the Code, that she will suffer undue hardship if required to repay the student loans. Therefore, the Debtor's student loan obligations are not discharged.

A separate order reflecting the Court's ruling will be entered contemporaneously with this Memorandum Decision.