In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3074

Jon P. Goulet,

Plaintiff-Appellant,

v.

Educational Credit Management Corp.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01 C 288--John C. Shabaz, Judge.

Argued January 25, 2002--Decided March 27, 2002

Before Manion, Kanne, and Williams, Circuit
Judges.

Manion, Circuit Judge.  Jon P. Goulet
filed for Chapter 7 bankruptcy and,
pursuant to an adversary proceeding,
sought to discharge his government-
guaranteed educational loans owed to the
defendant, Educational Credit Management
Corporation ("ECMC"), a not-for-
profitorganization that administers
guaranteed student loans. After a hearing
on the merits, the bankruptcy court
concluded that the student loans would
impose an "undue hardship" on Goulet
under 11 U.S.C. sec. 523(a)(8), and
therefore entered an order discharging
the loans. ECMC appealed to the district
court, which reversed the decision of the
bankruptcy court. In re Goulet, 264 B.R.
527 (W.D. Wis. 2001). Goulet appeals, and
we affirm the decision of the district
court that the loans are not
dischargeable under Section 523(a)(8).

I.

The bankruptcy court made the following
findings of fact. The debtor, Jon P.
Goulet, is 55 years old, lives with his
mother in Eau Claire, Wisconsin, and
helps her around the house since his
father recently died. Goulet has an 11-
year-old son, of whom he does not have
custody. He owes $228 per month in child

support. At the time of the bankruptcy court proceedings, Goulet's mother was paying one-half of the monthly payment on his behalf and he was in arrears on the child support obligation. Goulet's mother generally supports him from her own income, including her Social Security payment, and does not charge him any rent or lodging expenses. He does not receive any form of public assistance.

After graduating high school in Wisconsin in 1963, Goulet attended the University of Wisconsin-Eau Claire periodically from 1963 through 1968. In 1969, he transferred to Regis University in Denver, Colorado (at that time known as Loretta Heights) and, in 1972, he earned his bachelor's degree in history, graduating with a 3.45 GPA. Between 1972 and 1983, he worked at various jobs in Denver, including bartending and restaurant management. In 1984, he moved back to Eau Claire and became a life insurance agent. For the next few years, he made a steady, comfortable living and his income ranged from approximately $20,000 to $30,000.

Then, Goulet's fortunes took a turn for the worse. In 1989, he had his insurance license revoked due to a charge of insurance fraud. He was also arrested for felony possession of cocaine, with intent to deliver./1 After attending out-patient counseling, he worked as a bouncer and bartender from 1988 through 1990. From 1991 to 1995, Goulet went back to school, attending the University of Wisconsin-Stout and completing all the required courses for a master's in psychology with a 3.7 GPA. However, he did not obtain his degree because he failed to complete a statistical analysis for his thesis. Goulet also testified that he did not complete his master's degree work because a counseling job requires 3,000 hours of post-degree experience and certification, which he believed he would be unable to achieve in light of his felony conviction.

After quitting the master's degree program, Goulet applied for and was rejected from some counseling positions. Since then, he has held various bartender positions and managed a restaurant for a short time. As recently as the district court proceeding, he was employed as a real estate agent for Edina Realty, but

had yet to make a sale or obtain a listing./2 His income for the year 2000 was $1,490.00 and his monthly expenses, excluding his child support obligation, are approximately $492.00 (or $5,904.00 annually).

While attending graduate school at UW-Stout, Goulet obtained 21 student loans totaling, with accrued interest, approximately $76,000.00./3 The debt is accruing at a 9% interest rate. In September 1994, when his first payment was due, Goulet requested and received a forbearance agreement on the loans. He also timely requested and received additional forbearance agreements when subsequent payments became due, the last in May 2000. At that time, ECMC stopped granting forbearances and Goulet subsequently filed his petition for bankruptcy, seeking relief from the debt. Goulet never made a single payment on his student loans.

Goulet testified that he has suffered from a drug and alcohol problem for approximately 30 years. He has never sought in-patient treatment, but he has had some out-patient counseling, notably through Alcoholics Anonymous. The bankruptcy court heard the testimony of Mr. John Siebold, the manager of the club at the Eau Claire Golf and Country Club where Goulet had been a bartender. Siebold testified that he had never observed any indication that Goulet had an alcohol or drug abuse problem, but the court discounted this testimony, concluding that "we know as lawyers many of our colleagues go home and they're drinking every night." The bankruptcy court then concluded that Goulet was "a smart guy and [has] great capabilities. . . . [and] also [has] a significant problem in that [he has] an addiction." The bankruptcy court also investigated whether Goulet would have the ability to make payments in the future. During the hearing, it heard the testimony of Mr. Jim Theisen, an owner of a successful real estate business, who testified that first-year real estate agents made $17,000 to $40,000 and second-year agents made $25,000 to $60,000. The court, however, discounted Mr. Theisen's testimony, noting that "although we know you can make good money in the real estate business . . . . there are many people I know who wash out in that

industry."

After considering the foregoing facts and circumstances, the bankruptcy court, applying our circuit's test for "undue hardship," determined that Goulet did not have the money to make payments, that his inability to pay would persist for the significant future, and that he had made a good faith effort to repay the debt. The court thereby discharged Goulet's student loans. ECMC appealed the bankruptcy court's decision and the federal district court reversed. Goulet appeals.

II.

We must decide whether Goulet established that he would suffer "undue hardship" if his student loans were not discharged. Student loans are not dischargeable in bankruptcy unless they will constitute an "undue hardship" on the debtor. See 11 U.S.C. sec. 523(a)(8)./4 The Bankruptcy Code does not define "undue hardship," but this circuit has adopted the Second Circuit's three-pronged Brunner test, see Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 395, 396 (2d Cir. 1987), for evaluating such a claim. In the Matter of Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993). Under this test, the debtor must demonstrate (1) that he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. Roberson, 999 F.2d at 1135 (adopting test from Brunner, 831 F.2d at 396). The debtor has the burden of establishing each element of the test by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991) ("standard of proof for the dischargeability exceptions in 11 U.S.C. sec. 523(a) is the ordinary preponderance-of-the-evidence standard"). If the debtor fails to establish any one of the elements, the test has not been met and the court need not continue with the inquiry. Roberson, 999 F.2d at 1135. See also In re Brightful, 267 F.3d 324,

327-28 (3d Cir. 2001).

We now turn to the inquiry of "whether [Goulet's] circumstances meet that test, a question of law subject to de novo review." Roberson, 999 F.2d at 1137. In doing so, we are mindful that the trier of fact was the bankruptcy court, and therefore "we are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review." Brightful, 267 F.3d at 327 (citation omitted). See also In re Platter, 140 F.3d 676, 678 (7th Cir. 1998). We "accept the bankruptcy court's findings of fact, with the exception of those that are clearly erroneous, and place the burden on [the debtor] to establish that his circumstances warrant discharge of his loans." Roberson, 999 F.2d at 1137 (internal citation omitted). See also Fed. R. Bankr. P. 8013 ("[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

In examining the first Brunner prong, Goulet's financial condition, both parties agree that Goulet cannot maintain, based on his current income and expenses, a minimal standard of living for himself. At the time of the bankruptcy hearing, Goulet's yearly expenses, without factoring in his student loan debt, were approximately $5,904.00. This amount easily exceeds his most recent annual income of $1,490.00. Therefore, he has clearly established the first prong of the Brunner test.

Turning to the second prong, we look at whether additional circumstances exist indicating that Goulet's state of affairs is likely to persist for a significant portion of the repayment period. We stated in Roberson that this second prong "imputes to the meaning of 'undue hardship' a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period. . . . Accordingly, the dischargeability of student loans should be based upon the

certainty of hopelessness, not simply a present inability to fulfill financial commitment." Roberson, 999 F.2d at 1135-36 (citation omitted) (emphasis added). This requires evidence "of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time . . . ." Id. at 1136. In Roberson, the debtor was approximately 35 years old and had a school loan debt of approximately $10,000.00. He also had child support obligations and two drunk driving convictions. Under these circumstances, the court concluded that the debtor had not established the second prong, noting that "[w]hile any precise prediction of his future earnings and expenses is necessarily speculative, Mr. Roberson has not indicated his road to recovery is obstructed by the type of barrier that would lead us to believe he will lack the ability to repay for several years." Id. at 1137. The court listed examples of such barriers: psychiatric problems, lack of usable job skills and severely limited education. Id.

Here, Goulet contends that his age, the enormous amount of his debt, his alcohol and substance abuse problems and his felony conviction create substantial barriers to his ability to repay his student loans. He argues that amortization of a $76,000.00 debt over 20 years (when he would be almost 76 years old), accruing interest at 9% per year, would require him to pay over $600 per month, and that this would be impossible to do without imposing an undue hardship upon him. The bankruptcy court accepted this argument and determined that Goulet's inability to pay would persist, stating that "the evidence is absolutely clear, based on his past history, that it will persist; because during the whole decade of the 90's we see that he hasn't had the capacity to make these payments." In contrast, the district court determined that "[v]irtually any job would permit him to make payments on the loan while satisfying his personal needs. . . . common sense requires the conclusion that he could obtain some job which would permit loan payments." Goulet, 264 B.R. at 530.

We do not believe that the bankruptcy court clearly erred in its factual findings, but rather conclude that it

erred, as a matter of law, in holding that Goulet's circumstances rise to the level of those "additional, exceptional circumstances" necessary to satisfy the second prong of the Brunner "undue hardship" test. Goulet's contention that his alcoholism and felony conviction make it impossible for him to find work is unpersuasive. By his own admission, these circumstances predated his attendance at UW-Stout and his acceptance of the responsibility of these student loans. By returning to graduate school at the age of 45 and voluntarily assuming the debt, Goulet must have believed that he had future earnings potential. See Roberson, 999 F.2d at 1137 (noting that "government is not twisting the arms of potential students. The decision of whether or not to borrow for a college education lies with the individual . . . ."). He has serious problems, but we are reluctant to label these pre-loan problems "additional, exceptional circumstances" so as to constitute "undue hardship" for purposes of Section 523(a)(8). Additionally, while Goulet's testimony demonstrates that he has substance abuse issues, we note that the record is devoid of any evidence demonstrating that his problems are insurmountable, or that they impair his ability to work. See Brightful, 267 F.3d at 330 (no record basis for conclusion that debtor's emotional problems, including two suicide attempts, constitute "additional circumstances" under second prong of test). Presumably he has some source of revenue to maintain his claimed drug dependency. As the bankruptcy court noted, Goulet is an intelligent man. The record does not reveal that he lacks usable job skills or that he is hindered by a limited education. In fact, because of the loans, he received an excellent education. The natural conclusion, when considering his exemplary educational record and nearly-completed graduate work, is that Goulet can apply himself when he desires to do so. The record does not demonstrate that he lacks the capacity to work, only that he does not seem anxious to do so. Moreover, even if Goulet's prospects in the mental health field or the insurance industry are foreclosed, there is no evidence that Goulet is unemployable in other areas. Rather, the record indicates that Goulet has simply failed to diligently pursue employment such that he would be able to

alleviate his financial burdens. See Brightful, 267 F.3d at 329 n.4 (record indicates that debtor had not diligently pursued employment). Under these circumstances, we conclude that Goulet's condition has not reached the "certainty of hopelessness" that would lead us to find that his condition is likely to persist for a significant portion of the repayment period.

Finally, we turn to the third prong of the Brunner test and examine whether Goulet has made a good faith effort to repay the outstanding loans. This factor recognizes that "[w]ith the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income, and minimize expenses." Roberson, 999 F.2d at 1136. In concluding that Goulet had established this element, the bankruptcy court reasoned that he always sought, in a timely manner, to defer his loan payments and never let the loans lapse into default. In contrast, the district court concluded that there was little evidence that Goulet had made a good faith effort to make actual payments on his loans. The court determined that, while there was some evidence that Goulet had made an effort to minimize his expenses (apparently by staying at his mother's home and letting her pay for everything), there was little evidence of significant efforts to obtain employment or any effort to apply available income to the student debt. Goulet, 264 B.R. at 531. While it is hard to see good faith in paying nothing when obtaining payment deferrals, we need not resolve this question, given our conclusion that Goulet has not established that his financial condition is likely to persist as required by the second prong of the Brunner test./5 Roberson, 999 F.2d at 1138.

While we are not totally unsympathetic to Goulet's plight, we have noted, "if the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow." Roberson, 999 F.2d at 1137 (emphasis added). See also Brightful, 267 F.3d at 331 (noting that debtor's "hardship is real, but . . . it

is not undue"). We are hopeful that Goulet will make real efforts to better his situation for his sake, his mother's, and that of his son. If his chosen study of mental health counseling does not prove fruitful, he will have to search elsewhere for gainful employment.

III.

In sum, we conclude that Goulet has not demonstrated that the repayment of his student loans would constitute an "undue hardship" under 11 U.S.C. sec. 523(a)(8) and we therefore AFFIRM the district court's decision that the debt was non-dischargeable.

FOOTNOTES

/1 The record does not clearly establish when this conviction took place. Goulet testified that he was arrested in April of 1998, but the bankruptcy court found that he was arrested in 1980. In the context of other testimony, it appears to us that the accurate date is 1988, but while the actual date may be unclear, the fact of the conviction is not disputed. Goulet also testified that he had another felony conviction when he was 19 years old, but the record does not reveal the nature or disposition of this conviction.

/2 Goulet's counsel reported at oral argument that, as of the time he drafted the appellate brief, Goulet was unemployed.

/3 Goulet's counsel reported at oral argument that the amount owing had now exceeded $80,000.00.

/4 This section prohibits the discharge of an individual debtor from any debt "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. sec. 523(a)(8) (emphasis added).

/5 For the same reason, we need not reach Goulet's contention that there is no statutory basis for the third prong of the Brunner test. He argues that, since the statute merely asks whether the loans will impose an undue hardship on the debtor, we should not consider the debtor's past behavior.