In re Keith MASON, Debtor.

Educational Credit Management Corporation, Appellant and Cross–Appellee,

v.

Keith Mason, Appellee and Cross–Appellant.

BAP Nos. ID–04–1075–BMaP, ID–04–1077–BMaP.
Bankruptcy No. 03–00147.
Adversary No. 03–6122.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 30, 2004.

Filed Sept. 21, 2004.

Scott A. Tschirgi, Jones, Gledhill, Hess, Fuhrman, Bradbury & Eiden, P.A., Boise, ID, for Educational Credit Management Corporation.

Joseph M. Meier, Cosho, Humphrey, Greener & Welsh, P.A., Boise, ID, for Keith Mason.

Before BRANDT, MARLAR, and PERRIS, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Keith Mason, an intelligent, determined chapter 7[1] debtor, substantially overcame a learning disability and obtained a law degree, but finds that his disability impedes his admission to the bar, and adversely affects his access to the job market and professional employment.

He sought discharge of his student loans under § 523(a)(8). After trial, the bankruptcy court concluded that, although repayment of the full amount of the loan would impose an undue hardship on him, repayment of some lesser amount would not. Based on § 105(a) and *In re Saxman*, 325 F.3d 1168 (9th Cir.2003), the bankruptcy court granted partial discharge. *In re Mason*, 303 B.R. 459 (Bankr.D.Idaho 2004). We AFFIRM.

**1.** Absent contrary indication, all section and chapter references are to the Bankruptcy

## I. FACTS

Mason is 33 years old, single, physically healthy, and has no dependents. He filed his chapter 7 petition in January 2003, and a few months later this adversary proceeding for determination of dischargeability of his obligation to repay the approximately $193,000 he borrowed to finance his law school education. He settled with lender, Help Services Group, Inc., agreeing to repay $65,000 of the $93,000 owing over time at no interest. Reaching no agreement with Educational Credit Management Corporation ("ECMC"), he went to trial seeking to discharge the remaining debt of approximately $100,000.

Four witnesses testified: Mason, his parents, and ECMC's expert vocational consultant, Nancy Collins, whose written evaluation was also admitted. The undisputed evidence was that Mason was diagnosed with a learning disability in third grade: he takes longer to read, confuses letters, misses words and detail, and inverts phrases. He was not expected to complete high school, but his determination enabled him to progress well beyond that. Mason served eight years in the National Guard, and was able to finance most of his undergraduate education at Boise State University, whence he graduated in 1995 with a bachelor's degree in philosophy, via the GI Bill. Mason attended Gonzaga University Law School from 1996 to 1999. Although dismissed mid-program for his low GPA, he was readmitted on conditions intended to improve his academic standing; Gonzaga granted his request for accommodations for his learning disability, including additional time to complete exams.

After law school graduation, Mason moved back to Boise, and in late 1999

Code, 11 U.S.C. §§ 101–1330.

began working at Micron PC as a process analyst, earning $26,000 annually, which he hoped to parlay into a position in the company's legal department. Mason moved back to his parents' home in 2000 to study for the Idaho State bar exam. He did not pass, and does not intend to retake it; statistically, the success rate for repeat takers is 30%. Mason obtained a commercial driver's license in order to earn some income while studying. He again worked at Micron PC as a government contracts technician, reviewing proposals and requests to bid for contracts, earning $14 per hour, from mid–2001 until he was laid off in January 2002. After receiving unemployment benefits for several months, Mason began working as an independent contractor for a friend's home-siding installation business, earning $10 per hour. He has no fixed schedule, and works on an "as needed" basis, which allows him to apply for other jobs and attend interviews.

Mason has worked with an employment service counselor, and considered a variety of jobs, but has had poor results. Based on his experience, he does not expect his law degree will improve his chances of securing employment: despite his education, he finds his disability limits the types of jobs available to him, he needs longer to find a job, and must put in extra search efforts to find an appropriate job. The parties do not disagree that, notwithstanding his disability, and given a longer and concerted search effort, Mason's employment prospects will in time be more remunerative and fitting with his education. Mason expects ultimately to be able to earn annually in the $30–$35,000 range.

The evidence at trial indicated Mason has an average monthly income of $1000–$1200, though in some months he earns considerably less. His monthly household expenses were only $1300–1340, including rent of $400. He has no health insurance. His future expenses, including maintenance for an older vehicle and health insurance premiums, are likely to increase, and as of February 2004, the monthly loan payments of $50 became due to Help Services under the settlement referenced above. *Mason*, 303 B.R. at 465, n. 4.

At the conclusion of trial, the bankruptcy court ruled:

> Plaintiff has satisfied the first and third prongs of the *[In re] Brunner*[, 46 B.R. 752 (S.D.N.Y.1985), aff'd, 831 F.2d 395 (2d Cir.1987)] test as to the total amount of student loan debt held by Defendant. However, Plaintiff failed to satisfy the second prong as to the total amount owed on his student loan debt. Therefore, Plaintiff is not eligible for a discharge of all amounts owed to Defendant under § 523(a)(8). *On the other hand, Plaintiff did establish that he would experience an undue hardship if forced to repay all of his student loans.* Thus, under *Saxman*, the Court concludes Plaintiff is entitled to a partial discharge.

*Id.* at 468–69 (emphasis added; citations omitted).

In short, the court found that requiring Mason to repay all of the ECMC loan would impose an undue hardship on him, but that repayment of some reduced amount would not, because at that reduced amount the second prong and the *Brunner* test would no longer be satisfied.

The court entered judgment discharging the excess of the ECMC loan over $32,400, and stayed the obligation to make payments on that amount for two years. The judgment provides that no interest accrues on the nondischargeable sum during that time; after payments begin, interest accrues on the judgment at 7.5% per annum.

ECMC timely appealed, seeking reversal of the order and a judgment of nondischargeability. Mason timely cross-appealed, seeking a full discharge.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(I), and we do under 28 U.S.C. § 158(c).

## III. ISSUES

Whether the bankruptcy court erred:

A. in its findings regarding undue hardship; and

B. granting partial discharge.

Although the parties argue, for contrary reasons, that the bankruptcy court should not have reached the partial discharge question, neither contends that the court abused its discretion in determining the amount not discharged, or in setting the payment terms. There is thus no issue presented regarding the amount of the ECMC loan not discharged.

## IV. STANDARDS OF REVIEW

■ We review the bankruptcy court's findings of fact for clear error, *In re Pena*, 155 F.3d 1108, 1110 (9th Cir.1998), and review de novo the bankruptcy court's application of the legal standard to decide whether a student loan debt is dischargeable as an undue hardship. *In re Birrane*, 287 B.R. 490, 494 (9th Cir. BAP 2002).

## V. DISCUSSION

■ Government-funded or guaranteed student loans are nondischargeable "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents[,]" § 523(a)(8), which we explicated in *In re Nys*:

Congress' main purpose in enacting the bankruptcy code was to ensure insolvent debtors a fresh start by discharging prepetition debts. However, under § 523(a)(8), there is a presumption that educational loans extended by or with the aid of a governmental unit or nonprofit institution are nondischargeable in bankruptcy in the absence of undue hardship to the debtor or the debtor's dependents. This law furthers congressional policy to ensure that such loans, extended solely on the basis of the student's future earnings potential, cannot be discharged by recent graduates who then pocket all of the future benefits derived from their education.

The debtor bears the burden to prove by a preponderance of the evidence that he or she is entitled to a discharge of the student loan.

Neither the code nor the legislative history of § 523(a)(8) defines "undue hardship," but case law has held that it is something more than "garden-variety hardship." *Pena*, 155 F.3d at 1111. Cases involving "real and sustained" hardship may merit discharge.

308 B.R. 436, 441 (9th Cir. BAP 2004) (some citations omitted).

### A. *Brunner Test*

■ We further noted that the Ninth Circuit has adopted a three-part test for "undue hardship":

First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." ...

Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." ...

The third prong requires "that the debtor has made good faith efforts to repay the loans...." *Pena,* 155 F.3d at 1111 (quoting *Brunner,* 831 F.2d at 396).

Debtor must satisfy all three parts of the *Brunner* test before her student loans can be discharged. *See Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman),* 325 F.3d 1168, 1173 (9th Cir. 2003). Failure to prove any of the three prongs will defeat a debtor's case.

*Nys,* 308 B.R. at 441–42. We consider first the test, and then partial discharge.

### 1. *Minimal Standard of Living*

The bankruptcy court's finding that, given Mason's monthly expenses exceed his monthly income, he has no present ability to maintain a minimal standard of living if forced to repay his loans, is unchallenged. We agree that the bankruptcy court correctly found that the debtor had met his burden to prove the first prong of the *Brunner* test.

Turning to prongs two and three, at issue here:

### 2. *Additional Circumstances*

■ As noted above, Congress intended to make discharging student loans more difficult than discharging other normally nondischargeable debt. *Birrane,* 287 B.R. at 497. There must be evidence that the debtor will be unable to repay for several years, because of psychiatric problems, lack of useable job skills, severely limited education, physical problems, or *any* other circumstance which will persistently interfere with debtor's ability to repay. *Id. See also Nys,* 308 B.R. at 444–45.

■ The primary "additional circumstance" on which Mason relies is the learning disability he has had since childhood. ECMC argues that Mason may not rely on a condition known to him when he signed the notes to satisfy the "additional circum-

stances" test, unless that condition has been somehow exacerbated since the loan was taken out, citing *In re Brightful,* 267 F.3d 324, 330 (3d Cir.2001), *Goulet v. ECMC,* 284 F.3d 773, 779 (7th Cir.2002), and, at argument, *In re Gerhardt,* 348 F.3d 89, 92 (5th Cir.2003).

But none of these cases so holds: in *Brightful,* the Third Circuit did not exclude consideration of the legal secretary debtor's mental and emotional problems because they pre-existed her educational loans; rather, it reversed the undue hardship discharge because she had neither demonstrated how those problems impaired her ability to work, nor explained the significant (post-loan) decrease in her working hours. 267 F.3d at 329–30.

In *Goulet,* the Seventh Circuit obliquely hints that a pre-existing condition may not serve to establish the second *Brunner* prong:

> By his own admission, these circumstances [age, alcohol and substance abuse and a felony conviction] predated his attendance at [university] and his acceptance of the responsibility of these student loans. By returning to graduate school at the age of 45 and voluntarily assuming the debt, Goulet must have believed that he had future earnings potential.

*Goulet,* 284 F.3d at 779. In *Goulet,* the debtor had had drug and alcohol problems for approximately 30 years, long pre-dating the graduate school for which he had taken out the educational loans. The Seventh Circuit did *not* there say that pre-existing conditions could not be considered in analyzing prong two, only that it was "reluctant to label these pre-loan problems 'additional, exceptional circumstances.'" *Id.* After indicating that it found unpersuasive Goulet's contention that his alcoholism and felony conviction made securing work

impossible, and making the statement quoted above, the court noted the record was "devoid of any evidence demonstrating that his problems are insurmountable, or that they impair his ability to work.... The record does not demonstrate that he lacks the capacity to work, only that he does not seem anxious to do so." *Id.*

The Fifth Circuit, in *Gerhardt*, 348 F.3d at 92, quotes the "circumstances not present, or greatly exacerbated" language from *Roach*, discussed below, but says nothing more regarding any pre-existing condition. There, a healthy, well-educated 43–year old debtor with no dependents was a (part-time) principal cellist for a symphony orchestra, and collected unemployment in his off-season. He managed to attend an out-of-state music festival, while not seeking part-time or related employment (such as teaching or working in a music store).

As we noted in *Nys:*

> The Fifth Circuit [in *Gerhardt* ] found that the debtor did not prove undue hardship because, although he had chosen to work in a low-paying job in the field in which he was trained, he could obtain additional steady employment in a number of different arenas, such as teaching.

308 B.R. at 445.

The Fifth Circuit placed no reliance on any pre-existing condition of the debtor (nor identified any, unless being a cellist suffices) in concluding that he had not satisfied the second prong of the *Brunner* test, which it adopted in that case.

Thus no circuit court has held that a circumstance or condition in existence at the time the debtor obtained the educational loan in question must be excluded from consideration in the persistence analysis, or that the debtor must show a worsening or exacerbation to carry his burden on the second *Brunner* prong.

But the argument advanced by ECMC is set forth in one reported decision:

> The type of "additional circumstances" that would affect the debtor's continuing ability to repay would be a circumstance that impacted on the debtor's future earning potential but which was either not present when the debtor applied for the loans or has since been exacerbated. Otherwise, the debtor could have calculated that factor into its cost-benefit analysis at the time the debtor obtained the loan.

*In re Thoms*, 257 B.R. 144, 149 (Bankr. S.D.N.Y.2001). *Thoms* provides no firepower to ECMC's argument: the statement quoted above is unsupported by any reference to authority or textual analysis, and it is dicta. No pre-existing condition is specified in the opinion, and the court's analysis of the second *Brunner* element is wholly focused on the debtor's future economic prospects.

The court in *In re Roach*, 288 B.R. 437, 445 n. 33 (Bankr.E.D.La.2003), cites *Thoms* for this proposition, but provides no additional authority or analysis, and does in fact consider the nurse-debtor's pre-loan alcoholism in its analysis. In concluding that the debtor had not there shown sufficient persisting circumstances, the *Roach* court looked at her success in dealing with the pre-existing alcoholism, and its potential long-term impact on her professional license, and found that she had successfully overcome that condition. It is not evident that the court's analysis would have differed had the debtor's substance abuse problem arisen after she had obtained her educational loans.

■ In sum, ECMC's argument is unsupported by authority, even of the persuasive variety. As we said in *Nys:*

> [U]nder the *Brunner* test, "additional circumstances" are not defined solely by

their nature or by a convenient label, but instead by their effect on the debtor's "continuing inability to repay over an extended period of time." Therefore, the difference between "garden-variety hardship," and dischargeable student loan debt is simply that the latter requires a showing of circumstances enabling the court to predict the longevity of the financial hardship, on a case-by-case basis.

. . . .

[We] do not read *Pena* or *Birrane* as imposing a requirement that the "additional circumstances" of the second *Brunner* factor be "exceptional" circumstances such as "serious illness, psychiatric problems, disability of a [dependent], or something which makes the debtor's circumstances more compelling than those of an ordinary person in debt." Additional circumstances are *any circumstances,* beyond the mere current inability to pay, *that show that the inability to pay is likely to persist for a significant portion of the repayment period.* The circumstances *need be "exceptional" only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay.* The court may consider any number of circumstances that relate to future ability to pay. Depending on the case, the debtor's age, training, physical and mental health, education, assets, ability to obtain a higher paying job or reduce expenses, and other factors not listed here may be relevant. The test is, by its nature, case-by-case.

308 B.R. at 443–44 (citations omitted; some emphasis added; some emphasis omitted). In reversing the bankruptcy court, which had concluded that the second prong of *Brunner* required a showing of some exceptional circumstance, we held:

The "additional circumstances" test does not focus on a debtor's past choices, but on currently existing circumstances and what those circumstances show with regard to the debtor's future financial situation. Debtor was granted loans and deferments by the government, presumably under the government's standards. There is no basis under *Brunner* for punishing Debtor for taking advantage of the programs the government offered.

*Id.* at 446 (footnote omitted). Surely, if a debtor's past *choices* are not part of the analysis, his past (and continuing) conditions, over which he has no control, may not be held against him.

Finally, we note that accepting ECMC's argument about pre-existing conditions would seem to contradict public policy, and deter anyone with a known disability from seeking to finance post-secondary education. By law, a student loan lender cannot discriminate on the basis of disability in making loans. 20 U.S.C. § 1071(a)(2). It follows that a bankruptcy court should not be precluded from considering the disability as an "additional circumstance" when, because of that condition, the repayment would impose an undue hardship on the borrower. It is foreseeable that that will sometimes occur, and we do not believe Congress intended to ensnare precisely those against whom it forbade discrimination.

■ Mason is an intelligent, determined debtor who substantially overcame a learning disability and graduated from law school, but finds his disability impedes admission to the bar and obtaining professional employment. The bankruptcy court's finding that Mason met the second prong of the *Brunner* test was not clear error.

### 3. *Good Faith Effort to Repay*

We have previously cited two common factors to be considered in evaluating good faith: the debtor's efforts (1) to obtain employment, maximize income, and minimize expenses, and (2) to negotiate a repayment plan. *Birrane,* 287 B.R. at 499–500.

The bankruptcy court properly found that debtor had "difficulty putting his education to use" but had tried to do so, had attempted the bar examination, and was laid off. ECMC legitimately points out that Mason has worked only part-time, which does not maximize income, and had several months of "unexplained" unemployment in 2002. But he has continued to search for better work, and the effort shows good faith, particularly when considered together with debtor's minimal expenses.

Mason testified that he was somewhat aware of repayment alternatives, but did not actually apply for any repayment plan for the ECMC loans. In some circumstances that alone might support a finding that a debtor has not made a good faith effort to repay ECMC. *Birrane,* 287 B.R. at 500. But this is negated by other evidence, including his and his parents' payments on the loans, and their fruitless attempts to negotiate with ECMC, and by the fact that he did reach an agreement with his other lender. *Mason,* 303 B.R. at 468.

It is unclear what evidence was presented regarding what Mason's payment might be were he to consolidate or restructure all his student loans, but the bankruptcy court noted ECMC's counsel's concession ("Defendant's counsel ... acknowledged"), *id.* at 465, that even the lowest payment on the consolidated or restructured ECMC loans ($164 per month) would be beyond his ability to pay. The court had previously noted that Mason's living expenses exceed his income. *Id.*

The bankruptcy court did not clearly err in finding that Mason has demonstrated a good faith effort to repay.

### 4. *Partial Discharge*

In *Saxman,* the Ninth Circuit held that bankruptcy courts may equitably grant partial discharge of student loans where appropriate. The bankruptcy court found *Saxman* difficult to apply:

By sanctioning partial discharges, the *Saxman* decision establishes an important clarification concerning student loan dischargeability. But the decision is also problematic for at least two reasons. First, the court did not reconcile the bankruptcy court's ability to grant partial discharges with the *Pena/Brunner* paradigm. To grant a partial discharge, *Saxman* requires that the bankruptcy court conclude that all the *Brunner* elements for an undue hardship discharge have been established. Then, and even though the debtor has seemingly established the right to a full discharge of the student loan debt under the statute, *Saxman* instructs the bankruptcy court to consider scaling back that relief based upon equitable considerations. In this respect, *Saxman* seems incongruous with the teachings of *Pena/Brunner.*

*Saxman* also fails to offer any practical guidance to the bankruptcy court concerning *how* to craft a partial discharge. The decision does not address how the bankruptcy court should determine the amount of student loan debt that should be "partially" discharged....

In spite of the lack of guidance from the Ninth Circuit on these important issues, the Court will endeavor to apply the *Brunner* test, as modified by *Sax-*

*man,* to the facts presented in this action. In doing so, the Court must consider first whether Plaintiff has shown it would be an undue hardship for him to repay any of his student loan debt owed to Defendant, or stated differently, whether he has shown that he is entitled to a full discharge. Then, if Plaintiff has failed to meet his burden in satisfying the *Brunner* test with regard to a full discharge, the Court must consider whether Plaintiff has shown that it would be an undue hardship if he were required to pay some portion of debt to Defendant or, in other words, whether Plaintiff has shown that he is entitled to a partial discharge.

*Mason,* 303 B.R. at 464 (emphasis in original; footnote omitted).

The bankruptcy court concluded:

*Plaintiff failed to satisfy the second prong as to the total amount owed on his student loan debt. Therefore, Plaintiff is not eligible for a discharge of all amounts owed to Defendant under § 523(a)(8). On the other hand, Plaintiff did establish that he would experience an undue hardship if forced to repay all of his student loans.* Thus, under *Saxman,* the Court concludes Plaintiff is entitled to a partial discharge.

*Mason,* 303 B.R. at 469 (emphasis added; citations omitted). In short, the court found that requiring Mason to repay all of the ECMC loan would impose an undue hardship on him, but that repayment of some reduced amount would not, because then the second prong of the *Brunner* test would no longer be satisfied.

■ Parenthetically, we note that our reading of the bankruptcy court's decision differs from the district court's in *ECMC v. Pope,* 308 B.R. 55, 61 (N.D.Cal.2004). In finding *Mason* "unpersuasive," the district judge there apparently understood it as holding it unnecessary that the debtor satisfy all three prongs of the test to obtain partial discharge. While we see how the first sentence of the paragraph we quoted at page 4, above, could be so interpreted, the next sentence notes that Mason would experience an undue hardship if forced to repay all of his student loans. *Mason,* 303 B.R. at 469. It is clear to us from the analysis which precedes this passage that the bankruptcy court correctly construed "undue hardship" as requiring satisfaction of all three prongs of the *Brunner* test.

The bankruptcy court's analysis is consistent with the developing law on partial discharge: surveying courts in this Circuit which considered partial discharge after *Saxman,* all three prongs of *Brunner* were met with respect to the amount discharged in *In re Cota,* 298 B.R. 408 (Bankr.D.Ariz. 2003); *In re Adler,* 300 B.R. 740 (Bankr. N.D.Cal.2003); *In re Marks,* 301 B.R. 563 (Bankr.N.D.Cal.2003); *In re Williams,* 301 B.R. 62 (Bankr.N.D.Cal.2003); and, of course, *Pope,* 308 B.R. 55. *See also In re Miller,* 377 F.3d 616, 622 (6th Cir.2004), wherein the Sixth Circuit, citing *Saxman* and our *In re Blair,* 291 B.R. 514, 520 (9th Cir. BAP 2003), held that, to grant a partial discharge under § 523(a)(8), the bankruptcy court must find that repayment of the amount discharged would impose an undue hardship on the debtor. That is precisely what the bankruptcy court did here.

■ Finding that debtor could pay ECMC a reduced amount, but not the full amount of his student loan, without undue hardship permitted the bankruptcy court to make the equitable determination of how much should not be discharged. *Saxman,* 325 F.3d at 1174–75.

## VI. CONCLUSION

The bankruptcy court's finding that Mason could repay some, but not all, of his

student loan without undue hardship was not clear error, and its exercise of discretion in setting that amount is unchallenged.  We AFFIRM.