**In re Sharon GEYER and Patrick Geyer, Debtors.**

**Sharon Geyer, Patrick Geyer, Plaintiffs,**

**v.**

**U.S. Department of Education, Direct Loan Servicing Center, Defendants.**

Civ. No. 05-0727.
Bankruptcy No. 05CV0727–LAB (RBB).
Adversary No. 04–90124.

United States District Court,
S.D. California.

March 13, 2006.

130

Sharon Geyer, San Diego, CA, pro se.

Patrick Geyer, San Diego, CA, pro se.

Robert H. Plaxico, San Diego, CA, for Defendants.

## ORDER AFFIRMING BANKRUPTCY COURT JUDGMENT

BURNS, District Judge.

Debtors Sharon and Patrick Geyer appeal from the judgment of the United States Bankruptcy Court for the Southern District of California, entered pursuant to order granting summary judgment to the United States Department of Education ("DOE"). For the reasons which follow, the judgment is affirmed.

Debtors filed a Chapter 7 bankruptcy petition and received a general discharge. They discharged approximately $13,000 in general unsecured debt. The only pre-petition debt remaining after the general discharge were federal education loan obligations incurred by Mrs. Geyer. (*See* Record on Appeal ("RA") at 5.) At the

time of the bankruptcy court's decision, the loans amounted to $16,312.34, including accrued interest. (RA at 48.)

 Student loans are generally presumed to be nondischargeable. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir.2001). A debtor who seeks to discharge student loans must file an adversary complaint against the education loan holder, and prove that "excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Accordingly, Debtors filed an adversary complaint in bankruptcy court, seeking to discharge the student loans. (*See* RA at 5.) They claimed they had over the past several years earned insufficient income to pay the loans, and that their financial situation was unlikely to change in the future. (*Id.* at 5, 260–65.) The DOE filed a motion for summary judgment, which Debtors opposed, and the bankruptcy court granted. (RA at 210–11.) Debtors appeal the bankruptcy court's judgment.

 "A bankruptcy court's grant of summary judgment is reviewed *de novo.*" *Paulman v. Gateway Venture Partners III (In re Filtercorp, Inc.)*, 163 F.3d 570, 578 (9th Cir.1998). Viewing the evidence in the light most favorable to the nonmoving party, the reviewing court must determine "whether there are any genuine issues of material fact and whether the [bankruptcy] court correctly applied the relevant substantive law." *Id.* (quoting *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir.1996)). A bankruptcy court's "application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship" is also reviewed *de novo. See Rifino,* 245 F.3d at 1087.

On appeal, Debtors do not dispute the underlying facts. They argue the facts demonstrate it is unreasonable to expect they will have the financial resources to pay the student loan, and that these circumstances pose an undue hardship. They also maintain the bankruptcy court misconstrued the term "undue hardship" when he considered their future ability to pay.

 Although the Bankruptcy Code does not define "undue hardship," case law recognizes the adjective "undue" indicates Congress viewed "garden-variety hardship" as insufficient excuse to discharge student loans. *Id.* A debtor must prove three elements to obtain discharge of a student loan obligation:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living ... if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (internal quotation marks and citation omitted). "[T]he burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted. If the debtor fails to satisfy any one of these requirements, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *Id.* at 1087–88 (internal quotation marks and citations omitted). Accordingly, the bankruptcy court did not err in considering whether Debtors may be able to repay the student loans during their remaining term.

 The bankruptcy court granted DOE's summary judgment motion primarily based on the second element—whether additional circumstances exist indicating that, if forced to repay the loan, the debtor's inability to maintain a minimal stan-

dard of living is likely to persist. (*See* RA at 211, 265–67.) This element "is intended to effect the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Rifino*, 245 F.3d at 1088–89 (internal quotation marks and citations omitted).

■ Viewing the evidence in the light most favorable to Debtors, there are no genuine issues of material fact as to: (1) their ability to maintain a minimal standard of living if the loans are not discharged, and (2) their ability to maintain a minimal standard of living for a significant portion of the remaining repayment period. Accordingly, the bankruptcy court did not err in ruling as a matter of law that Mrs. Geyer's student loans were not dischargeable.

From 1996 through 1998, Mrs. Geyer borrowed $18,400 to attend Arizona State University ("ASU"). Subsequently, she made over $6,000 in payments toward that debt. With the student loan funds, she obtained a B.A. in English Literature in 1998. She worked in a variety of full time and part time positions prior to attending ASU, including bookkeeper, medical transcriptionist, and a secretary. She has working knowledge of three foreign languages: Farsi, Arabic and Hebrew. After graduating from ASU, she held a part-time temporary administrative job for six months, and subsequently took a part-time job together with her husband stocking shelves at West Marine. In the spring of 2001, they both left that job to go on a three-month trip to Israel to volunteer on an archeological project for the antiquities department of the Israeli government. After returning from Israel in the summer of 2001, Mrs. Geyer gave up looking for

employment through 2004. While she explains she gave up because she could not find work due to age discrimination, this also enabled her to write and publish two books in 2003 and 2004, respectively. At the time of the adversary action, Mrs. Geyer was working on her third book, and had received $600 in royalties for her first two books. She only recently resumed her efforts to find work, and found part-time work at Cosco, which pays a minimum wage. She also receives Social Security in the amount of $430 per month.

Mr. Geyer [1] received a B.A. in philosophy from Valparaiso University in 1979 and an M.A. in religious studies/archeology from ASU in 1998. Prior to receiving his M.A., he taught science at San Diego and Phoenix parochial schools for several years. His income enabled Debtors to save $10,000 each in IRA accounts in late 1990s. After graduating from ASU, Mr. Geyer worked as a substitute teacher in San Diego, and subsequently as a research associate at University of San Diego ("USD"). His work at USD involves research projects and monitoring construction excavations for potential artifacts for $500 per month. In addition, he is certified as an archeological monitor by the County of San Diego. He is occasionally retained on construction projects, and is paid for that work separately and in addition to his work through USD. Such construction project work has paid as much as $11,800 per project. One of these projects enabled Debtors to travel to Israel in 2001.

Mrs. Geyer is 63 and Mr. Geyer is 52 years old. They are in good health and have no dependents. Mrs. Geyer's student loans are the only debt remaining. She consolidated her student loans and elected

---

1. Spouse's income is relevant to the determination of undue hardship. *See Greco v. Sallie Mae Servicing Corp. (In re Greco)*, 251 B.R. 670, 676–77 (Bankr.E.D.Pa.2000); *White v. U.S. Dep't of Educ. (In re White)*, 243 B.R. 498, 508–09 (Bankr.N.D.Ala.1999).

to repay them under the Income Contingent Repayment Plan, which sets the payments based on the borrower's income. If the income falls below a certain level, no monthly payment is due. Under this plan, based on Debtor's income, Mrs. Geyer's current monthly payment is zero. A borrower whose monthly payment is zero is considered current, and there is no adverse credit reporting to the credit bureaus. The maximum repayment period under this plan is 25 years. Any portion of the loan at the end of this period is discharged, although the discharged amount may be considered taxable income. (RA at 42–55.)

The foregoing facts to do not raise a genuine issue of material fact regarding undue hardship. Excluding the student loans from discharge does not impose any hardship on Debtors, since, by virtue of the Income Contingent Repayment Plan, they are not required to make any payments at all. Accordingly, they cannot show that they cannot maintain a minimal standard of living if the loans are not discharged. *See Rifino*, 245 F.3d at 1087. For the same reason, they cannot show that the loans would preclude them from maintaining a minimal standard of living for a significant portion of the remaining repayment period. *See id.*

In the alternative, assuming *arguendo* that Debtors had to make loan payments at a level greater than zero, their history and background shows they are capable of earning more than they spend, and that their state of affairs need not persist in the future. For Debtors to prevail, "[t]here must be evidence that [they] will be unable to repay for several years, because of psychiatric problems, lack of useable job skills, severely limited education, physical problems, or any other circumstance which will persistently interfere with [their] ability to repay." *Educ.*

*Credit Mgmt. Corp. v. Mason (In re Mason)*, 315 B.R. 554, 560 (9th Cir. BAP 2004). Debtors' claim they cannot secure better employment due to age discrimination. The record does not support this claim. They were able to earn more in the recent past. For example, they were able to save $20,000 in late 1990s. In 2001, they spent three months in Israel volunteering on an archeological excavation. Not only did they forego earning any income during this time, they used $11,800 of their prior earnings to pay for living expenses. In addition, Mrs. Geyer is actively engaged in her writing career and may earn additional royalties from her books. Increasing Debtors' current level of income is not out of their control. Some of the difficulties in increasing their income can be attributed to their less than complete dedication to retaining employment, by, for example, leaving for three months to volunteer in Israel, and their less than persistent efforts to find new or higher paying employment. Under these circumstances it would not be unconscionable to require them to take steps to earn more. *See U.S. Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir.BAP1999).

For the foregoing reasons the bankruptcy court did not err when it granted the DOE's summary judgment motion. The bankruptcy court judgment is therefore **AFFIRMED**.

**IT IS SO ORDERED.**